*Wytheville.*

NORFOLK & WESTERN RAILROAD COMPANY v. MILLS & FAIRFAX.

JULY 11, 1895.

1. APPELLATE COURT—*Second Appeal—Effect of Prior Decision.*—On a second appeal, or writ of error, in the same case, every proposition of law decided on the first appeal, or writ of error, is binding on the appellate court whenever that case comes before it for adjudication. It is *res judicata.* Applying this rule to the case in judgment, the decision on the former writ of error settled and decided the true construction of the contract in suit, and fixed the relative rights of the parties thereto.

2. APPELLATE COURT—*Objections to Evidence not Made at the Time.*—Objections to the introduction of evidence not made at the time cannot be considered by the appellate court.

3. APPELLATE COURT—*Verdict of Jury.*—The appellate court will not interfere with the verdict of a jury unless. it appears that it was rendered plainly against the evidence, or without evidence.

4. AWARD—*Engineer's Estimates—Fraud or Mistake.*—Although a contract between two parties stipulates that in all questions connected with certain estimates required by the contract to be made, and the amounts payable by and under the contract, the decision of the engineer of one of the parties shall be final and conclusive on all parties; and that upon the final estimates of such engineer certain releases shall be secured by the other party before receiving the *per cent.* of money reserved by the terms of the contract, yet if the conduct of such engineer was fraudulent, or he was guilty of a mistake so gross as to amount to a fraud on the rights of the opposing party, the latter is not bound by such estimates and need not tender such releases, but may maintain his action on the contract to recover the true amount due him.

5. TENDER—*Willingness to Pay—Payment into Court.*—A willingness to pay the amount admitted to be due is not the equivalent of a legal tender of the amount, though followed by bringing the money into court to make the tender good, when no such tender was ever actually made.

6. INSTRUCTIONS—*When not Error to Instruct.*—It is not error to refuse to give instructions asked for by a party to a suit, when substantially the same ground is covered by other instructions given by the court. But where only constructive fraud on part of the defendant is necessary to entitle the plaintiffs to recover, it is error to give an instruction which involves the idea that willful, or actual, fraud is necessary.

7. JURIES ARE THE TRIERS OF FACTS, UNDER PROPER INSTRUCTIONS FROM COURT.—Whether the plaintiff was entitled to recover the higher or lower of two prices fixed by a contract for different classes of work, or whether he had waived or abandoned his right to recover the higher price, were questions of fact which were properly left to the determination of the jury, under instructions which correctly propounded the law and gave them great latitude in the range of their inquiry. *American Manganese Company* v. *Virginia Manganese Company*, distinguished.

8. CASE AT BAR—*Modification of Contract—Change in Method of Work—Engineer's Monthly Estimates—Receipts in Full—Releases.*—Under the evidence certified, considered as upon a demurrer to the evidence by the plaintiff in error, the defendant in error was entitled to recover the higher price fixed by the contract for the work performed by him, and there has been no such modification of the terms of the contract or change in the mode of doing the work, acquiesced in by the defendant in error, as would deprive him of the higher price called for by the contract, nor is he debarred from such recovery by accepting and receipting for the monthly estimates of the engineer at the lower figure. Nor was the defendant in error debarred from instituting this action by reason of failure to tender the releases required by the contract.

Error to a judgment of the Circuit Court of Roanoke city, rendered September 27, 1894, in an action of covenant, wherein the defendants in error were the plaintiffs, and the plaintiff in error was the defendant.

*Affirmed.*

This was an action to recover damages for a breach of covenant. The plaintiffs had contracted to construct a tunnel and do other work for the defendant, and the parties disagreed as to the price to be paid per cubic yard for certain portions of the work. The contract provided that the chief engineer of the defendant company should from time to time make

estimates of the work, and when completed, should make a final estimate, and the work should be paid for upon these estimates.    The plaintiffs claimed that the chief engineer had made a mistake in his estimates so gross as to amount to a fraud on their rights.    A number of instructions were given by the trial court, which are set out in the opinion of Judge Cardwell.    The following instructions tendered by the defendant were refused:

### Defendant's Instruction No. 1.

"The court instructs the jury that if they believe from the evidence that the plaintiffs performed the work provided for in the contract sued upon in this case, and that in accordance with said contract monthly estimates were made from time to time of the work done and materials furnished under said contract, and said monthly estimates in accordance with the terms of said contract were accompanied by the certificates of the chief engineer of the defendant company approving the same, and that the plaintiffs received from time to time the payments as provided in said contract under said monthly estimates, and if they further believe from the testimony that after all the work embraced in said contract had been completed a final estimate was made of the quality, character and value of said work which said final estimate was accompanied by a certificate of the said chief engineer of the railroad company as provided in said contract, and if they further believe that the amount appearing due to the plaintiffs according to the certificate of the said engineer on the said final estimate was offered to said plaintiffs and that they refused to accept the same, then the plaintiffs are not entitled to recover in this action unless the jury believe from the evidence that in making said estimates and certificates the said engineer was guilty

of fraud or intentional misconduct or of a mistake so gross as to necessarily imply bad faith on his part.''

## No. 2.

''The court further instructs the jury that if they believe from the evidence that the plaintiffs performed the work provided for in the contract sued upon in this case in accordance with the terms thereof, and that monthly estimates were made accompanied by the certificate of the chief engineer of the defendant company, as provided therein; and that the amounts found due by the said monthly estimates and certificates from month to month, were paid to the plaintiffs, and receipted for by them in full, and that the only amount now remaining due to the plaintiffs is a portion of the reserved percentage mentioned in said contract and that the said amount has been offered to the said plaintiffs and they have refuse to accept the same, then they must be held to have acquiesced in the estimates and certificates of the said engineer and cannot recover in this action.''

## No. 3.

''The court instructs the jury that if they believe from the evidence that after the execution of the written contract sued upon in this cause and before the work mentioned in the plaintiffs' declaration was begun, the specification with reference to the manner in which the excavation of the tunnel should be made was modified by, and with the consent and acquiescence of one of the plaintiffs to such an extent that instead of doing the work as herein stipulated, the coal bed was required to be excavated first throughout its entire length from one end of the tunnel to the other, and if the jury further believe that the coal bed did not become of a less thickness than four feet,

as mentioned in the specification, at any point in the work done by the plaintiff; and if they further believe that the price fixed in the contract and all the other terms and provisions thereof (except so far as modified) were intended to remain unchanged, and if they further believe that in accordance with the contract and specifications as so modified the plaintiffs performed the work therein required and if the jury further believe from the evidence that monthly estimates were made from time to time and that certificates of the chief engineer as provided for in the contract approving the same were made and that the amounts found due from month to month from the beginning of the work to the final monthly estimate were paid to the plaintiff and receipted for by him and that after the completion of the work provided for in said contract as so modified a final estimate was made as provided for in said contract, and a certificate was made by the chief engineer of the defendant company approving the said final estimate, and if they further believe that the amount appearing to be due to the plaintiffs by said certificate was offered to them by the defendant company and that they refused to accept the same, they cannot recover in this cause."

### No. 4.

"The court further instructs the jury that if they believe from the evidence that the work provided for in the contract sued on in this cause was performed by the plaintiffs under the terms of said agreement and that monthly estimates were made of the said work accompanied by the certificate of the chief engineer of the railroad company as provided in said agreement and that the plaintiffs received all of the amounts found due by said monthly estimates including that found due by the last monthly estimate and if the jury further believe

that after the completion of the work provided for in said contract a final estimate was made and that said final estimate was approved by the certificate of the chief engineer of the defendant company provided therein, and if they further believe that the amount appearing to be due by the certificate of the said chief engineer was offered to the said plaintiffs with the request that before receiving the same that they would execute a release from all claims or demands whatsoever growing in any manner, out of said agreement, and if the jury further believe that the plaintiffs refused to give the release provided for in said contract and to accept said final estimate then the jury are instructed that the plaintiffs are not entitled to recover in this action, unless they believe that in approving said estimates and giving said certificates the said engineer was guilty of intentional fraud, or of such gross mistake as necessarily implied bad faith, or actual fraud on his part.''

### No. 6.

''The court instructs the jury that fraud is not presumed but must be proved by a clear preponderance of evidence, and that though the jury may believe from the evidence that the engineer under the circumstances of this case may have made a mistake as to the price that should have been paid the plaintiffs for the excavation made by him, yet if the jury believe from the evidence that he was honestly mistaken they cannot impute fraud to him merely on account of such mistake, and in order to impute fraud on account of the mistake (if they should believe from the evidence that a mistake was made) they must believe that the mistake was so gross as necessarily to imply that the engineer had not exercised an honest judgment in the premises.''

## No. 7.

"The court further instructs the jury that under the terms of the contract sued on in this case the line of road or gradients could be changed in any manner, and at any time, if the chief engineer of the defendant company should consider such changes necessary or expedient, and that in case of any such change that no claim for an increase in prices of excavating or embankment on the part of the plaintiffs on that account would be valid or be required to be considered by the said engineer unless such claim or claims were made in writing before the work on that part of the section, where such alteration was made, was commenced."

There was a verdict and judgment in favor of the plaintiffs for $29,512.44, and the defendant excepted.

*Watts, Robertson & Robertson* and *Wm. J. Robertson*, for the plaintiff in error.

*Eppa Hunton, Jr.*, and *Penn & Cocke*, for the defendants in error.

Cardwell, J., delivered the opinion of the court.

This case is the sequel to the case of *Mills & Fairfax* v. *N. & W. R. R. Co.*, 90 Va. 523, and grows out of a contract under seal between Mills & Fairfax and the N. & W. R. R. Co., dated the 1st day of February, 1887, whereby Mills & Fairfax agreed with the railroad company to build a specified portion of the Elkhorn branch of the Flat Top extension of the company's line of railroad, including the tunnel to be excavated to a finished section in a rectangular shape sixteen feet wide and nineteen feet high above sub-grade, through the Flat Top mountain on the Number 3 Coal Bed. The contract is voluminous, but the whole controversy depends upon

the price to be paid for the excavation of certain sections of
the tunnel, Henry Fairfax, one of the contractors who did
the work, and for whose benefit the suit is brought, maintain-
ing that he is entitled to $3.50 per cubic yard instead of
$1.75, the amount allowed him.    The following provisions in
the contract bear directly on this subject: "For Flat Top
tunnel excavation, coal at 85 cents per ton of 2,240 lbs; for
Flat Top tunnel excavation, rock and other material, at $1.75
per cubic yard."    *    *    *    "The nineteen (19) feet of height
of the section (of the tunnel) will be made up in its lower half
partly of No. 3 coal bed, and its upper half of the over-lying
slates, fire-clay and sandstone."    *    *    *    "If the coal bed
should become of a less thickness than four feet exclusive of
the slates and coal not usually mined in run of mine coal in
adjoining collieries, this will entitle the contractor to the
price of three and one-half ($3.50) dollars per cubic yard for
the entire section of the tunnel instead of the prices for coal
and other excavation mentioned herein."

The contract also contains these provisions: "III. Pay-
ment is to be made by the party of the second part for work
done and materials furnished under this contract, on or about
the fifteenth day of each month, upon proper estimates ren-
dered on the last day of the preceding month for the work
done and materials furnished during the preceding month to
the extent of and not beyond 85 per cent. of the amount of
such estimates, and such monthly estimate, to be valid, must
be accompanied by the certificate of the engineer of the com-
pany approving the same and declaring that the work done
and materials furnished as therein stated are according to this
contract, and that the charges for the same are according to
this contract, and without such certificate, no estimate shall
be valid and no payment can be demanded, and in all ques-
tions connected with such estimates and the amounts payable
thereby and thereunder, the decision of the said engineer shall

be final and conclusive on all parties; and the balance thereof, or the 15 per cent. remaining due on such estimates, shall not be payable until the whole work to be done under this contract has been fully completed, but shall be kept back as part of the security for the performance of this contract on the part of the parties of the first part."

"IV. When the engineer in charge has furnished his certificate that all the work embraced in this contract has been completed agreeably to the specifications and in accordance with the directions and to the satisfaction and acceptance of the said engineer, there shall be a final estimate made of the quality, character, and value of said work, according to the terms of this agreement, when the balance appearing due to the said parties of the first part according to the certificate of said engineer, shall be paid to them within thirty days thereafter upon their giving a release under seal to the party of the second part from all claims or demands whatsoever, growing in any manner out of this agreement, and upon their procuring and delivering to the party of the second part full release in proper form and duly executed, from mechanics and material men, of all liens, claims, and demands for materials furnished and provided, and work and labor done and performed upon or about the work herein contracted for under this contract."

All work under the contract having been completed by Henry Fairfax, to whom Mills had assigned all interest therein, and Fairfax refusing to accept payment according to the final estimates made out and certified to by the engineer, under the fourth clause of the contract, an action of covenant was instituted in the court below to recover the 15 per cent. reserved under "section 3" of the contract, and the difference between $1.75 per cubic yard and $3.50 for a section of 1,200 lineal feet, equal to 13,200 cubic yards, of the tunnel from which the coal vein entirely disappeared.

The allegations contained in the three counts in the declaraton filed, may be briefly stated as follows:

First. That the work upon the tunnel was completed by plaintiffs on July 8, 1888, (the stipulation in the contract requiring its completion by August 1, 1887, having, during the progress of the work, and for a valuable consideration, been waived by the defendant company), in the most workmanlike and substantial manner, and to the satisfaction and acceptance of the engineer of the defendant company, and in accordance with the stipulations, &c., in the contract; that the defendant did not carry out or comply with the stipulations, &c., of the contract, in this: that it had not paid the plaintiffs $3.50 per cubic yard for 1,200 lineal feet of the tunnel, making 13,200 cubic yards, for which plaintiffs were entitled to receive $3.50 per cubic yard, but paid plaintiffs only $1.75 per cubic yard for the 13,200 cubic yards; that the coal bed did not only become of a less thickness than four feet, exclusive of slate, &c., but disappeared entirely from the tunnel for 1,200 lineal feet, at eleven cubic yards per running foot, making 13,200 cubic yards, and for which plaintiffs are entitled to compensation at the rate of $3.50 per cubic yard, according to contract, &c.; that the defendant company did, by its engineer, on the 8th of July, 1888, make a so-called final estimate of said work, but the alleged final estimate is not according to the price fixed for the section of the tunnel in which coal bed "No. 3" became of less thickness than four feet, &c.; that after the completion of the work on the tunnel and the acceptance thereof by the engineer, the defendant company has failed to pay the plaintiff the 15 *per cent.* retained by the defendant, and remaining due to plaintiffs according to the tenor and effect of the contract, &c., although plaintiffs were then, and have ever since been, ready and willing, upon the performance by the defendant of the covenants and agreements of the contract, on its part with the

plaintiffs, to give a release under seal to the defendant, and to provide and deliver to defendant a full release in proper form and duly executed from mechanics, &c., as provided for in the contract; and that both the monthly and final estimates made by the engineer, were not made according to the terms of the contract, but were made in open and direct violation of the terms and intendment of the agreement under seal between the parties, in this: that by the estimates of the engineer, the price of $3.50 per cubic yard, fixed by the contract or agreement for the section of the tunnel in which the coal bed "No. 3" became of less thickness than four feet, (and in fact, wholly disappeared from the tunnel) was altered by the engineer and put at $1.75 per cubic yard, and that, in so doing, the engineer made a mistake so gross as to amount to a fraud upon the plaintiffs, depriving them of the sum of $23,100, to which they are entitled under the contract.

Second. The second count is like the first, except that, in charging that the estimates and certificates of the engineer were a mistake so gross as to amount to a fraud, it alleges that "the engineer, at the time the said certificate and estimates were made, knew that the said 'No. 3' coal bed not only became of less thickness than four feet, as aforesaid, but entirely disappeared from the tunnel, which said conduct on the part of the engineer is a fraud upon the rights of the said plaintiffs."

The third count need not be noticed, as it was not relied on, and may be considered out of the case. The defendant railroad company demurred to this declaration, and to each count thereof, "the demurrer being not to its form, but to its substance, and going to the merits of the case," in which demurrer plaintiffs joined; whereupon the Circuit Court on September 3, 1892, sustained the demurrer, and to this judgment a writ of error was awarded the plaintiffs by this court.

Upon a hearing of the cause by this court, the judgment

of the. Circuit Court was reversed, and the cause remanded for a trial on the merits of the case, (90 Va. 523, *supra*,) which trial was had at the September term of the Circuit Court, 1894, and a verdict rendered by the jury in favor of the plaintiffs for the sum of $29,512.44, with interest from July 8, 1888, till paid, and judgment entered by the court accordingly. To this judgment a writ of error was awarded the defendant company by this court, and the case is now here for the second time.

We will first consider the effect of the decision of this court on the former appeal. This court, in disposing, on the former appeal, of the demurrer to the declaration—that is, in determining whether or not the facts alleged in the declaration, or in either count thereof, are sufficient to give plaintiffs a good cause of action—must of necessity have construed the contract upon which the action is brought.

We have only to examine the opinion of the court (90 Va. 527) to find that this court then construed this clause to mean that if the coal bed became of less thickness than four feet, exclusive of slates, &c., or, in fact, entirely disappeared from the tunnel for a distance of 1,200 lineal feet, equal to 13,200 cubic yards, as alleged in the declaration, or for any distance, then the plaintiffs should recover of the defendant the difference between $1.75 per cubic yard, and $3.50 per cubic yard, for those sections of the tunnel in which the coal vein became of less thickness than four feet, &c., or from which the coal vein entirely disappeared.

We further find that this decision of the court also determined, (using substantially the language of the opinion) that if the engineer in charge of this work, notwithstanding the clear and explicit provision in the contract, and the acknowledged disappearance of the coal vein from the course of the tunnel, and notwithstanding that the work had been completed by plaintiffs agreeably to the specifications, and in accordance

with his directions and to his satisfaction and acceptance; yet certifies, on the 8th of July, 1888, that the plaintiffs are entitled to only $1.75 per cubic yard instead of $3.50 per cubic yard for that section of the tunnel from which the coal vein entirely disappeared, this conduct on the part of the engineer was either a fraud, or a mistake so gross as to amount to a fraud upon plaintiffs' rights, and in either event plaintiffs were entitled to recover.

It furthermore decides and determines that if the estimates made out by the engineer are not correct, because fraudulent, or because not within the terms of the contract, the tender of the release, or releases, provided for in the fourth clause of the contract, was not necessary before plaintiffs could maintain their action for the amount due by defendant on the tunnel work, or the 15 *per centum* reserved till the work was completed.

We are of opinion that the construction placed upon the contract between the parties on the former appeal is correct; and that the court rightly decided the matters stated. That construction of the contract, together with the court's ruling on the points stated, became the law of this case, and it is a well-settled rule of this court, that a question which has been decided upon the first appeal in any cause, cannot be reviewed or reversed upon any subsequent appeal in the same cause. *Holleran* v. *Meisel*, *ante* p. 143, and the authorities there cited.

This court having overruled the defendant's demurrer, the case was remanded to the Circuit Court for the plaintiffs to maintain the allegations in their declaration by proof; and all questions of fact were to be determined by the jury under proper instructions to be given by the court to guide them in reaching their conclusions.

The real controversy in this case may be briefly stated thus: It is contended on behalf of plaintiff in error that the true

meaning of the contract between the parties is, whether the coal vein remained in the rectangle of the tunnel, as set forth in the specifications, or not, if the vein or bed of coal did not become of a less thickness than four feet, exclusive of slate, &c., and defendants in error were able to follow it and make use of it in driving the "Heading of the tunnel," the contract provided that they were to receive $1.75 per cubic yard only, for excavating the material from the section of the tunnel from which the coal vein entirely disappeared, and not $3.50; second, that by acquiescing in certain changes in the mode of doing the work under the contract, defendants in error had waived their right to claim the higher price for excavating the material from the section of the tunnel from which the coal vein disappeared entirely, if they ever had that right; third, that by accepting and receipting for the monthly estimates certified by the railroad company's engineer, defendants in error waived their right to recover the higher price specified in the contract for excavating the material in the section of the tunnel from which the coal vein entirely disappeared; and fourth, that defendants in error could not recover in this action because they had not tendered to the plaintiff in error the release, or releases, provided for in the fourth section of the contract.

On the other hand, it is contended by the defendants in error that the true meaning of the contract is, that the coal vein having disappeared entirely from the rectangle of the tunnel for 1,200 lineal feet, equal to 13,200 cubic yards, they were entitled to receive $3.50 per cubic yard for excavating this section of the tunnel, instead of the $1.75 paid them.

2d. That there has been no modification of the contract, or change in the mode of doing the work in the tunnel, acquiesced in by the defendants in error, which deprived them of the higher price specified in the contract for excavating the

material from that portion of the tunnel from which the coal vein entirely disappeared.

3d. That, in accepting and receipting for the monthly estimates certified by the engineer, defendants in error did not waive their right to recover the difference between $1.75 per cubic yard for the 13,200 cubic yards of material, exclusive of slates, &c., excavated from the section of the tunnel from which the coal vein entirely disappeared, and $3.50, as the engineer, in certifying said monthly estimates, was guilty of a fraud, or a mistake so gross as to amount to a fraud, upon the rights of defendants in error, and that they had received these monthly payments under protest, relying upon receiving the true amount due them under the final estimate to be made, as provided in the fourth clause of the contract.

4th. That they were not estopped from bringing this suit on the ground that they had failed to tender to the plaintiff in error the release, or releases, provided for in the fourth clause of the contract, because the engineer, in certifying the monthly estimates and the final estimate of the work done in the tunnel, was guilty of a fraud, or of a mistake so gross as to amount to a fraud, upon the rights of the defendants in error; and,

5th. That all claims for labor or material having been paid by contractors, and the time within which laborers and material men could acquire a lien under the statute having expired, it was unnecessary for defendants in error to tender release, under fourth clause of contract, before instituting this suit.

The decision of this court on the former appeal, as we have already seen, settled all controversy over the construction of the contract in favor of the contention of the defendants in error; and, to determine whether they were entitled to recover the difference between $1.75 per cubic yard and $3.50 per cubic yard of material excavated from the section of the

tunnel from which the coal vein entirely disappeared, it was only necessary for defendants in error to show by proof, at the trial before the jury, that the coal vein did dip out of or entirely disappear from the rectangle of the tunnel for 1,200 lineal feet, equal to 13,200 cubic yards, as alleged in the declaration. Upon proof of these facts, the burden was shifted from the defendants in error to the plaintiff in error, and the defendants in error were entitled to the verdict under the law, as established by this court, unless the plaintiff in error could make good the one or the other of the several grounds of defence heretofore enumerated. This was the crucial test as to the right of the defendants in error to a verdict by the jury, for, as we have seen, this court, on the first appeal, construed the contract according to the contention of the defendants in error, and also decided that if it was shown by proof that the coal vein did entirely disappear from the section in the rectangle of the tunnel, as alleged in the declaration, and the engineer, in the face of this fact, made and certified estimates of the work only allowing defendants in error the price fixed by the contract for the work estimated in that part of the tunnel as though the coal vein continued therein, and not of less thickness than four feet, exclusive of slates, &c., this was a fraud on the part of the engineer, or a mistake so gross as to amount to a fraud upon the rights of the defendants in error, and that they were entitled to recover; and further, that if this should be shown by the evidence to be the case, it was not necessary, before bringing their suit, for defendants in error to tender to plaintiff in error the release, or releases, provided for in section four of the contract. The enquiry, therefore, to be made here, is whether or not the matters to be determined by the jury have, under the instructions given by the court below, been fairly and rightly submitted to them.

Exception is taken to the ruling of the trial court in refusing

seven instructions asked for on behalf of plaintiff in error. The first three were properly rejected, because plainly misleading and inapplicable. They were predicated upon the erroneous assumption that a willingness on the part of the railroad company to pay to Fairfax the amount shown to be due on the final estimate certified by the engineer was the equivalent of a lawful tender of the amount, followed by bringing the money into court to make the tender good, while in point of fact, no such tender was ever made.

Instruction No. 4 was properly refused, because misleading and well calculated to convey to the minds of the jury the idea that they could not find for the plaintiffs unless the evidence was sufficient to establish intentional, that is, wilful fraud, or actual fraud, and this was not in accord with the decision of this court on the former appeal.

In the opinion of the court, after quoting from the case of *Condon* v. *Southside R. R. Co.*, 14 Gratt. 302, as authority for his conclusion, Fauntleroy, J., says: "But, even though no fraud, mistake, or misconduct, is alleged in the declaration, still it is alleged that the estimate and certificate of the engineer are not within the terms of the submission, but are in violation of the contract, and are for that reason void and inconclusive. The declaration alleges that the contract fixed the compensation of the plaintiffs, under the circumstances admitted, at $3.50 per cubic yard, and that the estimate of the engineer fixed the compensation at $1.75 per cubic yard. If this be true, the engineer has exceeded his authority, and abrogated the contract between the parties." This, to our mind, fairly states the law, and negatives the idea that it is necessary to inculpate the engineer in intentional, wilful fraud in order to warrant the jury in finding that the estimates certified to by him were not conclusive of the rights of the plaintiffs to recover in this suit. When the engineer's estimates are fairly made, in accordance with the manner pointed out

in the contract, they are binding; and when not fairly made, they are not binding.    Morse on Arbitration & Award, 38, and cases cited.

Instruction No. 5 was given by the court as asked for by the defendant, except that the court adopted it as its own instruction No. 8, which in no way prejudiced the defendant.

So far as proper to have been given, Instruction No. 6 is covered by the instructions given by the court.

The 7th and last instruction asked for by the defendant is covered by No. 9 given by the court, with an obviously proper addition thereto.

The ten instructions given by the court in lieu of those asked for by both parties, are as follows:

No. 1—"The court instructs the jury that if they believe from the evidence that Fairfax received from the railroad company compensation for the materials moved from the tunnel at the rate of $1.75 per cubic yard for that portion in dispute, and that he relied on his ability to adjust the matter satisfactorily with said company, and that, under all the circumstances, he had the right, reasonably, to so rely, from his conversation with Paddock and other officers of the company, then the acceptance of such payment at $1.75 is not to be taken as a waiver of his rights under the contract, or as acquiescing in the construction placed upon contract by defendant.    The jury must determine from all the facts and circumstances of the case whether the plaintiff has, by his conduct, waived any of his rights under said contract, or has acquiesced in the construction placed on the contract by the defendant."

No. 2—"The court instructs the jury that by the terms of the written contract sued upon, which are as follows: 'If the coal vein should become of a less thickness than four feet exclusive of slates and coal not usually mined in run of mine coal in adjoining collieries, this will entitle the contractor to

the price of $3.50 per cubic yard for the entire section of the tunnel instead of the price of $1.75 per cubic yard '—the parties had reference to the rectangle as shown on the blue print, nineteen feet high above the sub-grade, which may have been fixed at a point not exceeding two feet below the bottom of the No. 3 coal bed as opened at each portal; and, if the jury believe from the evidence that the said coal vein became of less thickness than four feet in said rectangle, then the plaintiff is entitled to the price of $3.50 per cubic yard for the space in which it was less than four feet thick, unless the jury believe that the parties placed a different construction upon said contract, or changed said contract by agreement. And the court further instructs the jury, that, though they may believe from the evidence that, when it became apparent that the coal vein disappeared from said rectangle by a dip or deflection in the vein, *that* the plaintiff assented to a change in the mode of doing the work contemplated, by agreeing to excavate the coal bed in its entire length, to the western portal, before taking down the top of the tunnel, and that, when said agreement was made for the change in the mode of the work, if nothing was said in reference to the price of the work to be done, (provided they believe such change in the mode of doing the work did not necessarily contemplate a change in the price also), then the terms mentioned in the written contract, as to the price, would prevail, and the plaintiff would be entitled to the price of $3.50 per cubic yard for the part of the work in dispute, unless the jury believe from the evidence that the defendant so construed the contract at the time the change in the mode of the work was agreed upon and while the work was being performed, as to entitle the plaintiff to demand and receive only the sum of $1.75 per cubic yard for said work, and that the plaintiff, with full knowledge of the defendant's construction of the said contract acquiesced in the said construction.''

No. 3—"The court instructs the jury that in determining the question whether or not the plaintiff acquiesced in the construction of the contract on the part of the defendant by which the defendant paid and the plaintiff received $1.75 per cubic yard for the material in the section of the tunnel in dispute they are to look to all the circumstances of the case and the plaintiff would not be considered as acquiescing in the defendant's construction of the contract unless he has neglected to assert his own construction thereof to the defendant or its agents for such length of time as to warrant the defendant in fairly believing that he had waived or abandoned his right to demand more than $1.75 per cubic yard."

No. 4—"The court instructs the jury to disregard all the evidence of the construction put upon this contract by W. W. Coe at the time this contract was entered into, unless the jury believe that the said construction was communicated by said Coe to Mills & Fairfax, and was acquiesced in by them, or unless the said Mills & Fairfax put the same construction on said contract at said time; and though they may believe from the evidence that immediately prior to and about the time the contract was written and signed by the plaintiffs the probability was discussed between W. W. Coe and the plaintiffs as to the 'petering out' of the coal vein in the mountain, yet such discussion cannot be considered by the jury as sufficient to change, modify, or add to the provisions and terms of said written contract but only for the purpose of ascertaining the circumstance connected with the subject matter of the contract at the time it was made, and the object and purpose of the parties as avowed at the time they entered into the contract; but the terms of said contract are to be construed as directed by the court in instruction No. 3."

No. 5—"If the jury believe from the evidence that the plaintiff in this case completed the tunnel through the Flat Top mountain in a workmanlike *manner* and substantial manner,

and to the satisfaction and acceptance of the engineer of the Norfolk and Western Railroad Company, and that the tunnel was accepted by said company, then the said plaintiff is entitled to recover any sum that may be due him for said work under the contract sued on, although there was a change in the method of doing the work which said change was ordered by the Norfolk and Western Railroad Company.''

No. 6—''If the jury believe from the evidence that there was no change in the contract sued on, or no construction of it by the parties different from the construction given it by the court; and if the jury further believe that the coal bed became of less thickness than four feet, exclusive of the slates and coal not usually mined in run of mine coal in adjoining collieries, in the rectangle sixteen feet wide and nineteen feet high, and described in the written contract, for the space of 1,200 lineal feet, which is equal to 13,200 cubic yards; and, if the jury further believe that the engineer of the Norfolk and Western Railroad Company, in his estimates for said work allowed the said Fairfax $1.75 per cubic yard, then these estimates are not in accordance with the terms of the contract sued on, but in making the said estimates the engineer committed a mistake so gross as to amount to a fraud upon the plantiff and neither the said monthly or final estimates are binding or conclusive upon the said plaintiff, but he is entitled to $3.50 per cubic yard for the aforesaid 13,200 cubic yards, subject to any proper credits.''

No. 7—''If the jury believe from the evidence that there was no change in the contract sued on and no construction of it by the parties different from that placed upon it by the court; and if the jury further believe that the coal bed became of a less thickness than four feet, exclusive of the slates and coal not usually mined in run of mine coal in adjoining collieries, in the rectangle sixteen feet wide and nineteen feet high, described in the written contract, for the space of 1,200

lineal feet, which is equal to 13,200 cubic yards, and if the jury further believe that the engineer of the Norfolk and Western Railroad Company knew the said coal vein became of less thickness than four feet, as aforesaid, in the rectangle aforesaid, at the time of his making the monthly and final estimates, and the said engineer allowed the said Fairfax $1.75 per cubic yard for said material in said estimates, instead of $3.50 per cubic yard, then these estimates are not in accordance with the terms of contract sued on, and this conduct on the part of the engineer is a fraud upon the rights of said plaintiff, and neither the said monthly or final estimates are binding and conclusive upon the said plaintiff, but he is entitl d to recover $3.50 per cubic yard for the aforesaid 13,200 cubic yards, subject to any proper credits.''

No. 8—''The court further instructs the jury that under the terms of the contract sued on in this case, the monthly estimates, in order to be valid, must be accompanied by the certificates of the chief engineer of the Norfolk and Western Railroad Company approving the same, and declaring that the work done and materials furnished, as therein stated, are according to the contract, and that the charges for the same are according to the contract; and without such certificate no payment could be demanded by the plaintiffs, and in all questions connected with such estimates, and the amounts payable thereby and thereunder, the decision of the said engineer is final and conclusive on both parties. And the court further instructs the jury, that if they believe from the evidence that the price fixed for the excavation mentioned in the plaintiffs' declaration was fixed in the monthly estimates provided for in said contract, and that said estimates were afterwards approved by the said engineer, and his certificates appended thereto, as provided in said contract, then the prices so fixed for all the work included in said estimates must be considered by the jury as the correct prices, unless the jury

further believe from the evidence that, in approving said esti-
mates and in making his decision in reference thereto, and in
giving the certificate approving the same, the said engineer
was guilty of intentional fraud, or of such gross mistake as
to necessarily imply bad faith on his part.''

No. 9—''The court further instructs the jury that under
the terms of the contract sued on in this case, the line of road
or the gradients could be changed in any manner or at any
time if the chief engineer of the defendant company should
consider such change necessary or expedient, and that, in case
of any such change, no claim for an increase of prices of ex-
cavating or embankment on the part of the plaintiffs on that
account would be valid, or be required to be considered by
the said engineer, unless such claim or claims were made in
writing before the work on that part of the section where
such alteration was made, was commenced.   Where this pro-
vision in the contract conflicts with the special · provisions in
relation to building the tunnel, the special provisions must
prevail.''

No. 10—''If the jury believe that the estimates provided
for in the contract were proper, and show the correct amounts
due the plaintiffs, then, before the plaintiffs could institute
suit to recover the reserved percentage, they were bound to
tender to the defendant the release stipulated for in the con-
tract.   But if the jury believe that the .estimates were not
proper because fraudulent, then the tender of such release
was not necessary in order to give the plaintiffs the right to
sue.''

We will not consider these instructions *seriatim*.   We are
of opinion that they fairly cover the entire case, and properly
submit the questions of fact to be determined to the jury.

The main question of fact upon which the case turned be-
fore the jury was whether or not there had been any change
or modification of the contract or in doing the work in the

tunnel, acquiesced in by the defendants in error, whereby they waived their right to recover the difference between $1.75 and $3.50 per cubic yard of the excavation in the section of the tunnel for which the coal vein entirely disappeared. It is stated by counsel for plaintiff in error in their brief, that the facts in the case are few and undisputed, and it is also stated in the petition for the writ of error as a fact which had not been disputed, that there was no change or modification made in the contract whatsoever, except the following: "That before any work was done on the tunnel at all, the parties having ascertained that, probably, the coal would make a dip at a certain point in the tunnel (as it had been ascertained that the same coal bed in that region in other mines had made a dip), instead of following strictly the provision of the specifications, which read as follows: 'The work to be so prosecuted from each end as to insure that the headings meet in close proximity to the centre of the tunnel, and the work of taking down the top shall closely follow that of making the coal excavation—the parties agreed that they should first follow the coal bed from one side of the mountain to the other, and not take down the top until after all the coal had been excavated; and the plaintiff not only acquiesced in the modification, but approved of it, and agreed to do away with certain provisions in his favor set forth in the specifications if such a modification should be made.'" Now, it appears from the evidence that the provisions done away with by this modification were the requirements that certain air chambers or shafts for ventilating the tunnel as the work progressed, that were to be construed by the railroad company might be dispensed with, the president of the company being anxious to be relieved from building them; but this was not assented to by the contractors except on the condition that the company would furnish the material to make the brettice work in the tunnel. It is furthermore stated as a fact, in the pe-

tition of plaintiff in error, that there was no other modifica-
tion whatever made, either as to the prices or as to any other
prov'sions of the contract, and this statement is fully sustained
by the facts.

The question as to whether defendant in error had acqui-
esced in the construction of the contract by which plaintiff in
error · paid, and he received, $1.75 per cubic yard for exca-
vating the material in the section of the tunnel in dispute, or
had waived or abandoned his right to demand more than
$1.75 per cubic yard, was for the jury to determine upon the
evidence before them, and that question was fully submitted
to them under the instructions of the court.    See Court's In-
structions, Nos. 1, 2, and 3 above.

The proper determination of the several points of defence
involved a consideration by the jury of the whole course of
dealings between the parties, and their relations to each other,
and especially of the evidence bearing upon the allegations of
fraud or gross mistake.    These are matters peculiarly within
the province of the jury to determine, and the court in its in-
structions properly left them the largest latitude, and invited
them to explore and consider all the evidence adduced in the
case before reaching a conclusion.

It seems to us that the law governing the case was also
fully and fairly given to the jury, to enable it correctly to
weigh the evidence and decide upon the contention of the
parties as to the effect of the receipts given by the defendants
in error in settlement of the monthly estimates of the engi-
neer, and also with respect to the failure of the defendants in
error to tender releases as provided for in the fourth clause
of the contract.    See Court's Instructions, Nos. 6, 7, 8, 9,
and 10.

Plaintiff in error relies with apparent confidence upon the
case of *Amer. Manganese Co., Lim.*, v. *Virginia Manganese
Co.*, (recently decided by this court) *ante*, p. 272, as authority

·in point upon the question as to whether defendants in error by receipting for the monthly estimates waived their right to recover more than $1.75 per cubic yard for the material excavated in the section of the tunnel in dispute. The cases are wholly dissimilar. The Manganese Case was one of separate and independent transactions between the parties directly, running through a series of years. There was no intermediary or arbiter to whom their controversies were to be submitted, and of course, there was no suggestion of fraud or of mistake on the part of such arbiter, as is the case here, but it was a case of a party who, through a long and uninterrupted course of dealings, with full knowledge of all the facts, acquiesced in a construction of the contract placed upon it by the other party; and, finally, there was in the *Manganese Case*, no provision which is the equivalent in any respect, to the fourth clause of the contract here sued on, and which postponed a final settlement until the completion of the work, and then authorized an estimate to be made of its quality, character, and value.

Exception is taken by the plaintiff in error to a verbal statement made by the judge presiding at the trial, when instruction No. 8 had been given, that "this instruction must be construed along with instructions No. 6 and 7, given;" but as this remark of the judge, could not in our opinion have affected the result, the exception is without merit.

Plaintiff in error having failed to make objection at the time to the matters set forth in bills of exception Nos. 6 and 7, they cannot be considered by this court. 4 Minor's Inst. Pt. 1 (2d ed.), 826; *Mitchell* v. *Commonwealth of Va.*, 20 S. E. R. 892.

We need now only consider the exception of the plaintiff in error to the ruling of the trial court in refusing to set aside the verdict of the jury and grant a new trial on the ground that the verdict is contrary to the law and the evidence. There is no

conflict, as we have seen, as to the facts proved; and, if there was, the case stands here as upon a demurrer to the evidence of defendants in error; and applying the rule, too well settled to require citation of authority, that "this court will not interfere with the verdict of the jury unless it appears that it was rendered plainly against evidence or without evidence," the verdict in this case must stand, as it is clearly sustained by the law and the evidence.

For the foregoing reasons, we are of opinion that there is no error in any of the rulings of the Circuit Court of Roanoke city, and its judgment is therefore affirmed.

KEITH, P., concurring:

I have deemed it proper to file a concurring opinion in this case. The case of *Condon* v. *Southside R. R. Co.*, 14 Gratt. 302, is a memorable judgment. It settled the law in this State upon a most interesting question, and has been frequently cited with approval in the courts of other States. It was followed in the case of *The James River & Kanawha Co.* v. *Adams*, 17 Gratt. 441, and we do not question nor doubt the law as thus established. But, whatever force may be attributed to the rule of *stare decisis*, and however respectable may be the authority upon which it rests, the principle itself is subordinate to another rule which declares that a case having been once determined in this court, every proposition of law then decided is binding upon this court whenever that case comes before it for adjudication. In the one instance, the cases are followed as precedents; in the other, they are recognized not only as the law, but *res adjudicata*, that is, an adjudication of the matter in controversy. If, therefore, there should appear to be any antagonism between the decisions of this court just adverted to, and the decision of this court in the first writ of error in this case, reported in 90 Va. 523, the latter

has paramount and binding force upon us. In my judgment, however, there is no conflict between them. Judge Moncure, in his opinion in *The James River & Kanawha Co.* v. *Adams*, reported at page 441 of 17 Gratt., after stating that the estimates made and approved by the engineer, such as are under investigation in this case, are final and conclusive unless objected to before paid, goes on to say, that it is argued that a fraudulent estimate is not conclusive, and that therefore the court would have erred in giving the instructions asked for by the defendants in that case. Without deciding whether fraud in making the estimates would avoid them at law or not, he declares that it is a sufficient answer to the argument to say that fraud will not be presumed, and that there was no evidence whatever of any such fraud before the jury. "If," said he, "the plaintiff had evidence of any such fraud, he should have offered to introduce it, and thus have plainly raised the question. Indeed there is no charge of fraud in the declaration, and certainly the court did not refuse to give the fourth instruction, and give another in lieu thereof, on the ground of fraud, but on wholly different and inconsistent grounds. An award is final and conclusive in equity as well as at law; and yet it may be avoided, always in equity, and sometimes at law, by proof of fraud. Such proof, when admissible, *gets the award out of the way*.

"So long as it remains in the way it is final and conclusive. It is never *prima facie* evidence merely of the matter it decides. If evidence at all, it must be conclusive."

Whatever doubt Judge Moncure may have entertained as to the effect of the allegation and proof of fraud in a court of law upon such estimates and receipts as are in evidence in this case, is forever set at rest, so far as this litigation is concerned, by the unanimous judgment of this court reported in 90 Va., where the court, in the most emphatic manner, asserts that the particular fraud set out and described in this

declaration, if proved, rendered null and void the estimates of the engineer, and obviated the necessity for the tender of a release upon the part of the defendants in error.

How could it be doubted that such would be the case? There is no instrument so solemn, there is no judgment or decree so binding, but that, if fraud in its procurement be alleged and proved, it ceases to protect the wrong doer or to obstruct the injured in the assertion of their rights. The opinion of Judge Caldwell is so clear, and to my mind so conclusive, both upon the law and the facts of this case that I shall not prolong this opinion, which it was perhaps unnecessary to have written at all. I do not understand that it was necessary to impute moral turpitude to the plaintiff in error, its officers, or agents, but the construction of this contract claimed by the plaintiff in error seems to me to be flagrantly and obviously erroneous and unjust.

As to the disappearance of the coal vein from the section of the tunnel excavated, there can be no doubt. It is not denied, nor even questioned. That the defendants in error did the work which entitles them to a higher rate of compensation is beyond all controversy, and the only ground upon which it is sought to defeat their recovery is the purely technical objection that a grossly erroneous estimate made by the engineer of the plaintiff in error interposes an insurmountable obstacle to their demand. I do not say, and I do not believe that the officers of the company were guilty of intentional, wilful fraud; but I do say, without hesitation, that their conduct in this case was predicated upon a mistake so gross as to amount to, and in all respects to be equivalent to, a fraud, so far as the rights of the defendants in error are concerned.

BUCHANAN, J., dissenting:

I am unable to concur in the opinion and conclusion reached by the majority of the court in this case.

As I understand the law, the trial court erred in giving and refusing instructions to the jury to the prejudice of the defendant company, the plaintiff in error here, for which its judgment ought to be reversed.

By the third clause of the contract sued on it was agreed between the parties that it should be the duty of the chief engineer of the defendant company to make and certify monthly estimates of the work done and the materials furnished, and the charges for the same according to the contract, and without his certificate no estimate was valid and no payment could be demanded; and, in all questions connected with such estimates and the amounts payable thereunder, the decision of such engineer was final and conclusive. It is clear from this provision of the contract that the parties thereto considered the possibility of differences of opinion, and of disputes arising upon the execution of the contract. It is to be presumed that it was also in their minds that it was possible that the engineer might err in the performance of his duties and in the determination of the matters which were left to his decision.

In order, therefore, that the interests of neither party might be placed in peril by dispute as to any of the matters covered by their agreement, or in reference to the work to be done, or the compensation to be paid, it was expressly stipulated that the engineer's determination of those matters should be "final and conclusive on all parties." That such was the effect of the provision of the contract referred to is settled by the decisions of this court and of the Supreme Court of the United States, and by the great weight of authority in this country. *Kidwell* v. *B. & O. R. R. Co.*, 11 Gratt.

676; *Condon* v. *Southside R. R. Co.*, 14 Gratt. 302; *Baltimore & O. R. R. Co.* v. *Polly, Woods & Co.*, 14 Gratt. 447; *James River and Kanawha Co.* v. *Adams*, 17 Gratt. 441 (note); *Martinsburg & Potomac R. R. Co.* v. *March*, 114 U. S. 549.

There is a provision in clause four of the contract for a final estimate, but it is clear that this final estimate provided for after the work was completed, did not nor was it intended in any way to destroy the finality or conclusiveness of the monthly estimates which are by the express terms of the third clause declared to be "final and conclusive on all the parties." It was argued in the case of *James River & Kanawha Co.* v. *Adams*, referred to above, 17 Gratt. 441-442, that there was a difference between the conclusiveness of the monthly estimates and the final estimate, but Judge Moncure, in delivering the opinion of the court, showed with convincing force, that such monthly estimates as are provided for in the contract sued on were as final and conclusive as far as they went as the final estimate itself.

He says in that case: "Whether either are conclusive or not depends upon the contract which may make either or both conclusive, according to the intention of the parties. Sometimes these monthly or periodical estimates are obviously designed as mere approximations, to enable the company to make safe and reasonable advancements to the contractor during the progress of the work. All that is required to the validity of such estimates (it has been held) is, that they were made *bona fide* and with the intention of acting according to the exigency of the contract. Redfield on Railways, 207; *Rouger* v. *Great Western Railway*, 27 Eng. L. & E. R. 35-46.

If evidence at all in an action for the balance due on the completion of the work, they would be *prima facie;* or, if conclusive, it could only be an estoppel in connection with

evidence of the assent of the parties.    But ordinarily these monthly estimates are designed to be accurate and final, as far as they go; and sometimes the contract expressly provides that they shall be final and conclusive.    Redfield R. R. 207; *Herrick* v. *Belknap's estate, &c.*, 27 Vt. 673; *Barker &c.* v. *Same*, 27 Vt. 700.    The contract in this case so provides.    It prescribes the same mode of proceeding in regard to the final as in regard to the monthly estimates, and declares both alike final and conclusive.    Indeed, it directs the final estimate to be made, not of the whole work, but of all work not embraced in former estimates.    Thus showing that, in effect, the final estimate is the last monthly estimate, and all the monthly estimates, as far as they go, are final estimates. It is true that these monthly estimates are not final and conclusive as to matters not embraced therein, or not considered and estimated by the engineer in making them.    In this respect they are unlike the final estimate which was intended and expressly directed to embrace ' all work not embraced in former estimates'; so that, while a part of the work might have been omitted in former estimates, because of its unfinished state or otherwise, it must of necessity be embraced in the final estimate.    But, as to matters embraced in the monthly estimates, they are as conclusive as the final estimate.''

These monthly estimates being final and conclusive in their character, they could only be attacked for fraud, or for a mistake so gross as to imply fraud upon the part of the chief engineer.    Whether there was such fraud or mistake is the gravamen of this action; and, without the allegation of fraud, or mistake so gross that it necessarily implied fraud, and proof thereof, the plaintiff was not entitled to recover.

If the proof in the case showed that the engineer was guilty of such fraud or of a mistake in making up and certifying the monthly estimates, still the conduct of the plaintiff, although

he was not satisfied with the determination of the engineer, was such as to conclude him for recovery in this action. In contracts where there is no provision for the arbitration or settlement of disputes and differences, as there was in this case, the rule is, if monthly statements are made by one party, upon an erroneous construction of the contract, and the other party accepts such estimates, receives payments of the amounts shown to be due him, and gives receipts for such amounts, with full knowledge of all the facts, he is concluded by such statements, payments, and receipts, and cannot go behind them.

It was said by this court in *Amer. Mang. Co.* v. *Va. Mang. Co., ante* p. 272, that "if the defendant knew of any irregularity or had ground of complaint at the time these monthly statements, returns, and payments were made, it was the duty of the defendant to have made known and insisted upon its objections then; but if, instead of doing so, it accepted such payments, and gave receipts in full for the amounts shown to be due by such settlements and returns, it is concluded by the original amounts as fully as if formal and final settlement of acounts had been made between the parties, and the defendant cannot now go behind such settlements and receipts in full, without showing there was fraud or mistake in weighing the ore, or in making returns thereof according to the method actually adopted for weighing and making such returns."

But in the case before us, the estimates made, and upon which the parties settled, were not made by either party to the contract, but by the chief engineer of the defendant company, selected by the parties for that purpose. His determination of the work done, materials furnished, and charges therefor, were declared to be final and conclusive on all parties, by an express stipulation of the contract. In such case, if there be objection to such estimate by either party, it is the duty of such party to make his objections at once, if he

intends to instist upon them. He cannot accept them, receive what appears by them to be due him, give receipts in full for such sums, and afterwards question their correctness for any cause of which he had knowledge when he accepted such payments and gave such receipts. These monthly estimates and certificates were the awards of the chief engineer, who, by agreement of the parties, had been made the arbiter of these matters, and his determination or award was conclusive and final upon the parties, unless he was guilty of fraud, or such gross mistake as necessarily to imply fraud, in making such estimates. If such fraud or mistake existed, either party had the right to reject them and to refuse to be bound by them; but neither party could act upon them and afterwards repudiate them, if he knew at the time he acted upon them by paying or receiving money, that the engineer or arbitrator was guilty of fraud, or of a mistake so gross as necessarily to imply fraud. There can be no question in this case that the plaintiff, when he received the money shown by those monthly estimates to be due him, and gave receipts in full therefor, had full knowledge of every fact he now relies upon to show fraud or mistake. These monthly estimates, if fraudulent or so erroneous as to imply fraud, were voidable. The plaintiff had the right either to avoid them, or to conform them. He could not take under them and deny their validity.

Mr. Pomeroy says, in discussing the ratification of voidable transactions, that "while the party entitled to relief may either avoid the transaction or confirm it, he cannot do both; if he adopts a part of it, he adopts all; he must reject it entirely if he desires to obtain relief. Any material act done by him with full knowledge of the facts constituting the fraud, or under such circumstances that knowledge must be imputed, which assumes that the act is valid, will be a ratification." 2 Pom. Eq. Jur. sec. 916.

Where an award, either because the arbitrators have exceeded their authority, or because all matters submitted have not been considered, or for any other reason, is voidable, the parties may expressly or impliedly ratify it. After such ratification it can no more be objected to. 1 Amer. & Eng. Ency. of Law, 714.

In a note to the same volume of the Encyclopedia, page 714, it is said, that it was decided in *Nell* v. *Fried*, 72 Ga. 201, "that where matters of controversy between two parties were submitted to arbitration, and the party in whose favor the award was made received money and notes of other persons from the opposite party, in full settlement thereof, knowing at the time that there was a mistake in the calculation, by which the full amount of interest due him had not been allowed, he could not retain the amount received under the arbitration, and also sue for the balance due by reason of the mistake. If he received the money and notes in full settlement under the award, after notice of the mistake, he must abide the settlement."

In Morse on Arbitration and Award, page 530, it is said that where, as often occurs, an award is voidable, it is perfectly capable of being ratified, and that such ratification may be either express or implied; "it may be made by a written or verbal assent or acceptance, or it may arise from acts done by a party of such nature as to raise a presumption of assent or acceptance, which he will thereafter be conclusively estopped to deny." *Culver* v. *Ashley*, 19 Pickering, 300.

One of the reasons why these monthly estimates are made final and conlusive is that as the work progresses the difficulty of accurately measuring the different kinds of work done, whether in rock, coal, or clay, increases. The substances removed or covered up in the fills and the cuts or tunnels show less clearly how much of each substance they contained. The result is that it is simply impossible after a

short time for even engineers of approved skill to make estimates that are correct, and any estimate which a jury may afterwards make is, at best, merely conjectural. Such provisions are therefore dictated by convenience, if not by necessity, tend to do justice to both parties, and are upheld and encouraged by the courts. *Baltimore & O. R. R. Co.* v. *Polly, Woods & Co.*, 14 Gratt. at page 459-60.

It is, therefore, the duty of the party who objects to such monthly estimates to make his objection promptly. Unless it be so made, one of the chief objects for which these monthly estimates were made, wholly fails.

The chief engineer made the monthly estimates and certified them, as the work was done, beginning April 16, 1887, and continuing until June 20, 1888. Each of these estimates showed the state of accounts between the parties up to that time, the balance due the plaintiff, which was then payable, and the amount reserved, as provided in the contract. When these estimates were made, from month to month, during that period, by the chief engineer, they were accepted by the parties, and settlements and payments made in accordance therewith. When each payment was made by the defendant, the plaintiff executed a receipt in full for the balance found to be due according to each monthly estimate, and such receipt was attached to the monthly statement, which showed clearly and distinctly the true state of accounts between the parties up to that date, according to the determination of the chief engineer. It is true that, during that period, the plaintiff showed some dissatisfaction with the prices that were allowed him by the chief engineer, but he never declined to accept these monthly estimates, nor to receive the amounts which they showed he was entitled to, nor to give receipts in full therefor. There is no claim that he ever made any formal protest to the engineer of the defendant company, as to these monthly estimates.

He was asked these questions, among others:

Q. When you were improperly estimated, did you make any objection to it, or did you state that you would claim the contract figures to the officers of the company, and if so, to whom ?

A. I stated once or twice to Mr. Coe that I considered that I was entitled to $3.50 per cubic yard for the material, when the coal vein disappeared.

Q. When was that ?

A. During the progress of the work. That I was not being properly estimated; that I was entitled to more money than I was getting, that is what I told Mr. Coe.

Q. Did you have any further conversation with Mr. Coe on the subject ?

A. Not until I was informed that the last item sheet for the company had been sent into his office. Then I made an earnest protest to Mr. Coe that I would not receive the final estimate based upon $1.75 per yard.

On cross-examination he testified as follows:

Q. And when you went to him and complained about these things he told you that he did not think you were entitled to any more ?

A. Yes sir.

The plaintiff had conversations during the progress of the work with some of the subordinate engineers of the defendant company, in which he claimed that he was not getting all that he was entitled to under his contract, but during that same period, the plaintiff was, in effect, writing to the higher officials of the defendant company every month that these estimates were correct and satisfactory to him—for his receipts in full for the monthly balances must be construed to have that meaning. The action of the plaintiff in accepting such estimates, receiving payments in accordance therewith, and giving receipts in full therefor, were such acts, if true,

as would estop the plaintiff from going behind the monthly estimates, and the jury should have been so instructed.    If this view of the law be correct, the instructions of the court given upon the point, were clearly erroneous.

This court, upon the former writ of error in this case, in which the demurrer to the declaration was involved, construed the contract sued on; and by that construction we are, of course, bound.    The only effect of the decision, however, was to hold that upon that construction of the contract, the allegations of each count in the declaration stated a good cause of action.    But that decision did not deprive the defendant of the right to make full defense upon the merits of the case.    Neither did it prevent it from showing that the parties themselves, as well as the chief engineer, had placed a different construction upon the contract from that placed upon it by this court, for the purpose of showing that the chief engineer was not guilty of fraud or mistake which implied fraud, in making his monthly estimates, and for the purpose of showing that the plaintiff had, with full knowledge of the facts upon which he relied to show the fraud or mistake, ratified and confirmed the monthly estimates, and was therefore estopped from denying that they were valid and conclusive as to the balances due him when made.

I agree with the majority of the court that the question whether or not the chief engineer was guilty of fraud, or of gross mistake in making and certifying the monthly estimates, was peculiarly within the province of the jury.    It was of the utmost consequence, therefore, that the jury should be properly instructed upon this question; and, whilst the instruction offered by the defendant company (No. 6), upon this point may not be an entirely correct statement of the law, the court ought not to have rejected it and refused to give any instruction in lieu of it.

Generally, if a party offers an incorrect instruction, the

court is not required to give a correct instruction in lieu of it, unless its refusal to do so would mislead the jury. But where, as in this case, the court rejects the instruction of a party and gives its own instruction in lieu of his, it is clearly its duty to instruct upon every point upon which he asks instruction, if there be evidence tending to establish the facts upon which it is based. Upon this point, I think the trial court also erred to the prejudice of the defendant company.

I am of opinion that the judgment should be reversed and a new trial awarded.

AFFIRMED.