# Wytheville.

## CORNELL AND COMPANY AND OTHERS v. STEELE.

### June 10, 1909.

1. CONTRACTS—*Engineer's Estimates—Gross Errors—Fraud.*—Notwithstanding the fact that a contract provides that the decision of the chief engineer of one of the parties shall be final as between the parties as to all questions arising under the contract, the other party will not be precluded from recovering the correct amount due him for work done under the contract where the engineer's estimates or classifications are so grossly erroneous as to amount to a fraud upon the rights of the injured party. It is not necessary to allege or prove bad faith, or an intention to commit fraud on the part of the engineer. It is enough that his estimates or classifications are so grossly erroneous as to amount to fraud. This doctrine is not in conflict with the rule that fraud must be established by clear and satisfactory evidence.

Error to a judgment of the Circuit Court of Fluvanna county in an action of *assumpsit.* Judgment for the plaintiff. Defendants assign error.

*Affirmed.*

The opinion states the case.

*Perkins & Perkins* and *Moon & Fife,* for the plaintiffs in error.

*Harmon & Walsh* and *Montague & Montague,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This action was brought by W. I. Steele to recover of J. N. H. Cornell and Company, a foreign corporation, and J. H. Fine,

a balance of $7,511.05, alleged to be due Steele from the defendants upon certain work which Steele sub-contracted with Cornell and Company, general contractors with the Virginia Air Line Railway Company, to do on the Virginia Air Line Railway, to be constructed by the general contractor from Lindsay, on the C. & O. Railway in Albemarle county, to a point on James river, about twenty miles distant, the plaintiff, Steele, undertaking by his sub-contract the construction of four miles of this road within a stated period and according to specifications as to the execution of the work. That Steele performed his part of this contract truly and faithfully seems not to have been questioned, and the controversy arises out of the classification of the material taken out and removed by him, made by Cornell and Company's chief engineer in charge of the work.

The contract, which was in evidence at the trial of this cause, shows the price of the excavation of the several kinds of material, to be taken out and removed by Steele, viz., earth, loose rock and solid rock, gives the definition of these several classes of material, and provides for monthly payments as the work progressed and for a final estimate on the completion and acceptance of the work; and the contract also provides that the decision of the chief engineer of the general contractor on all questions arising under the contract shall be final as between the parties.

J. H. Fine, who made the estimates on Steele's work, was the chief engineer of the general contractor, and also its vice-president, and as Steele progressed with his work he received monthly payments upon the estimates made by Fine; but, as we shall see later, protested all along that these estimates were incorrect. On the completion of Steele's contract in January, 1908, Fine made a final estimate showing that the general contractor, Cornell and Company, owed Steele $1,775.73, to which Steele objected, alleging that this estimate was based upon an erroneous classification of material excavated and removed, and thereupon Cornell and Company had the estimate reconsidered and

the work re-examined, but insisted that the action of its chief engineer was correct and would not be corrected, and so informed Steele. Whereupon, Steele selected one James Dickey, a competent engineer and an expert, to go over the work and make an estimate of it according to the provisions of the contract, and Dickey's estimate varied materially from that of Fine, the chief difference arising from the classification of material, the difference in the total quantity of material moved, or yardage, caused by certain measurements adopted by Dickey and not allowed by Fine being comparatively slight. Omitting the items of these estimates as to which Dickey and Fine agreed, the latter's final estimate allowed Steele for 42,113.1 cubic yards of earth, $9,896.58; 10,174.8 cubic yards of loose rock, $3,856.42; and 586.9 cubic yards of solid rock, $398.23; total, $14,155.13; while in Dickey's estimate these several items appear as follows: 30,011.1 cubic yards of earth, $7,052.60; 15,559.5 cubic yards of loose rock, $5,912.61; and 10,017.8 cubic yards of solid rock, $7,012.46; total, $19,977.67. The disclosures made by these estimates caused Steele to realize that despite his rigid economy and efficient work, he would sustain a loss of over $3,500 if Fine's estimate of his work was to be adhered to; and thereupon he brought this suit for $7,511.05, the amount of the difference between the final estimate made by Fine and that made by Dickey.

At the trial of the cause, it was submitted to the jury upon four instructions given by the court, to which neither party made objection, and the jury rendered its verdict for the plaintiff, assessing his damages at $3,600, and upon the verdict the court entered the judgment to which this writ of error was awarded.

The instructions of the trial court, in sum and substance, rightly told the jury that, notwithstanding the provision in the contract between the parties that the final estimate of the chief engineer of the general contractor, Cornell and Company, was to be final and conclusive on both parties, if they believed from the

evidence Chief Engineer Fine made such error of judgment or mistake in the estimates and classification of the work made by him as amounted to a mistake so gross as necessarily to imply bad faith and amount to a fraud upon the rights of the plaintiff, they should find for the plaintiff, even though they believed that said engineer had no intention to commit a fraud or to act in bad faith; and further told the jury, that if they believed from the evidence that the estimates or classifications by the company's engineer were not binding on the plaintiff because of gross error or mistake, amounting to a fraud, then they should make such classification of the material removed as they deemed proper, under the evidence and according to the provisions, of the contract, and assess the plaintiff's damages according to that classification at the prices specified in the contract, subject to proper credits.

The contract between the parties is explicit as to the classification of the material that was to be removed and the prices to be paid therefor, solid rock being recognized as the most expensive material, and therefore a higher price for its removal was fixed than for the removal of earth or loose rock. It will, therefore, be seen that the subject of classification of the work done by defendant in error was the crucial point in the case, for the determination of the jury, and we deem it only necessary to refer briefly to the evidence to show that it was sufficient to warrant the jury in regarding the estimate made by Fine so grossly erroneous as to amount to a fraud upon the rights of defendant in error.

The material classified as solid rock by defendant in error and Dickey, and disallowed by Fine, is clearly and unmistakably proven to be the same material, of the same nature and character of rock as that allowed defendant in error and classified by Fine as solid rock to the extent of 569 cubic yards. In other words, the evidence shows that the rock, classified as solid rock by defendant in error and by Dickey, was of the identical kind, character and formation as the 569 yards of solid rock

allowed by the estimates made by Fine, and that the arbitrary
rejection by him of over 9,000 cubic yards of this solid rock
removed by defendant in error, and classifying the same with
other material far less expensive to remove, was an error of
judgment or mistake so gross as to amount to a fraud upon
defendant in error's rights; and if the jury believed in the truth
and correctness of this evidence, it was of itself sufficient to
sustain its finding in his favor. *Mills & Fairfax* v. *N. & W.
Ry. Co.*, 90 Va. 523, 19 S. E. 171; Id. 91 Va. 613, 22 S. E. 556.

In the report of that case last mentioned, the syllabus in part
is as follows: "Whether the plaintiff was entitled to recover the
higher or the lower of the two prices fixed by the contract for
different classes of work, or whether he had waived or aban-
doned his right to recover the higher price, were questions of
fact which were properly left to the determination of the jury,
under instructions which correctly propounded the law, and
gave them great latitude in the range of their inquiry."

The defendant in error in this case, testifying in his own
behalf, stated that he all along protested that the classification
of the material removed by him, made by Chief Engineer Fine
in his monthly estimates, was grossly erroneous, and this state-
ment is not disproved; but plaintiffs in error rely upon the
contention, in support of which numerous authorities are cited,
that fraud must be established by clear and satisfactory proof.
The authorities cited sustain the proposition stated, but are
not at all in conflict with the law as expounded in the instruc-
tions given in this case with the approval of plaintiffs in
error, nor with the decided cases applicable to the facts sub-
mitted to the jury for determination.

In *Mills & Fairfax* v. *N. & W. Ry. Co. supra,* it was ex-
pressly stated that to avoid the engineer's estimate and classifica-
tion in a case like this, which is so grossly erroneous as to imply
fraud, it is not necessary to impute or prove moral wrong to
the engineer. All that is necessary in such a case is that the
evidence be sufficient to justify the jury in finding that the

estimates and classifications of the engineer are so grossly erroneous as to amount to a fraud upon the rights of the injured party.

In the case of *Kistler* v. *Ind. & St. L. R. Co.,* 88 Ind. 460, the contract between a railroad company and one who undertook to do certain work in its construction fixed the prices of the various kinds of work to be done, and provided that the engineer of the road should make estimates of the work from time to time upon which payment should be made and a final estimate which should be also paid, and that all disputes as to the meaning and execution of the contract should be referred to the engineer, and his decision should be final: *Held,* that where the engineer had failed to estimate the work, or by neglect, or by mistake, underestimated it, suit could be maintained for the recovery of the correct amount. In that case the court emphasizes that to entitle the contractor to recover the correct amount due him for work done, it was not necessary to allege and prove that the engineer making the estimates acted corruptly or fraudulently.

In a later case decided by the same court, *Louisville, &c. Ry. Co.* v. *Donnegan,* 111 Ind. 179, 12 N. E. 153, it was held: "A stipulation in a contract between a railroad company and a contractor, that the estimate made by the former's engineer as to the quality, character and the value of the work performed by the contractor shall be final against the latter, 'without further recourse or appeal,' cannot deprive him of the right to resort to the courts for the recovery of what may be due him, notwithstanding the estimates."

In that case it was considered that the estimates of the engineers were so grossly erroneous as to amount to a fraud upon the contractor, although moral turpitude was neither charged nor attempted to be proved; in other words, where the mistake is so gross as to amount to a fraud upon the rights of the contractor, he is not precluded from bringing his action to recover the correct amount due him, notwithstanding the provisions of

the contract or the fact that he had received and receipted for payments on estimates made during the progress of the work and before the final estimate.    See also *Edwards* v. *Hartshorn,* 72 Kan. 19, 82 Pac. 520, 1 L. R. A. (N. S.), p. 1055, where almost the precise facts were involved as in this case.

We are of opinion that there is no error in the judgment of the circuit court complained of, and it is, therefore, affirmed.

*Affirmed.*