**Richmond.**

MILLS & FAIRFAX v. NORFOLK & WESTERN R. R. Co.

MARCH 8th, 1894.

1. CONTRACT—*Construction—Fraud.*—A stipulation in a contract to construct a portion of a railway, making the estimates and certificates of the company's engineer as to the amounts due thereunder binding and conclusive on the parties in the absence of fraud, *held*, not to make such estimates and certificates conclusive on the contractor, where made in such plain violation of the terms and prices specified in the contract as to amount to a fraud, or a mistake so gross as necessarily to imply fraud, or bad faith, especially where the contract also provides for a final estimate of the quality, character, and value of the work according to the contract.

2. IDEM.—*Releases—Failure—Excuses.*—The failure or neglect of a contractor for the construction of a portion of a railway, to give, or tender to the railway company, releases from claims or demands of mechanics and material men, or ·others, as required by the contract, *held*, excused where the estimates of the company's engineer, upon which the payments are to be based, are incorrect and fraudulent, because not within the terms of the contract, especially where all the persons having any claims have been fully paid and the time has expired within which they could assert any demands against the company, or file any liens on its property.

3. ACTION ON CONTRACT—*Declaration.*—Where declaration in an action on such a contract, having set forth the same, alleges performance and acceptance of the work required thereby, and the refusal of the company to pay therefor, except on the estimates and certificates of its engineer made so plainly in violation of the terms and prices specified in the contract, as to amount to fraud, *held*, the declaration is sufficient in law.

Error to judgment of circuit court of city of Roanoke, rendered September 3d, 1892, in an action of covenant, wherein

George T. Mills and Henry Fairfax, late partners, doing business as Mills & Fairfax, were plaintiffs, and the Norfolk & Western Railroad Company was defendant. The company demurred to the declaration, the demurrer being not to its form, but to its substance and going to the merits of the case. The circuit court sustained the demurrer, and the plaintiffs brought the case here on a writ of error. Opinion states the case.

*Eppa Hunton, Jr.*, and *Penn & Cocke*, for plaintiff in error.

*Watts, Robertson & Robertson*, for defendant in error.

FAUNTLEROY, J., delivered the opinion of the court.

This suit grows out of a contract, under seal, between the said Mills & Fairfax, plaintiffs, and the Norfolk & Western Railroad Company, defendants, dated the 1st day of February, 1887, whereby the plaintiffs agreed with the defendant to build a certain specified portion of the Elkhorn branch of the Flat Top extension of the said defendant's line of railroad, including the tunnel through the Flat Top mountain on the "No. 3" coal bed.

The said contract is very voluminous, but the whole controversy depends upon the *price* to be paid for the excavation of certain sections of the tunnel, according to the specifications in said contract especially relative thereto; the plaintiffs maintaining, that they are entitled, by the express terms and intendment of the said contract, to $3 50 per cubic yard, instead of $1 75, the amount or price allowed to them. And this suit is to recover the difference between these prices, for the work done, and admittedly well, and acceptably, done, by the plaintiffs for the defendant, under the contract, amounting to the sum of $23,100, and the reserved per centum retained, viz: $9,709 20.

There was a coal vein running through the Flat Top mountain,

visible at each end of the proposed tunnel; and it is, in tunnelling, much easier and less expensive to excavate coal, than the solid rock through which tunnels are usually cut.   And not only is the coal itself, comparatively, easy and inexpensive to excavate, but the vein of coal is surrounded by shale, which is pliable, easy, and inexpensive to excavate.   Under these circumstances, it was an important matter with the contracting parties to determine whether this coal vein continued through the entire length of the proposed tunnel; or whether it would become of insignificant size.   It was impossible to determine this point, except by the excavation itself; therefore, in justice to both parties to the contract, it was explicitly agreed and stipulated to pay for the tunnel, *one price,* if the coal vein continued through the tunnel four feet thick; and a *larger price,* if it became of a less thickness than four feet.   The contract has the following provisions bearing on this subject: "For Flat Top tunnel excavation, coal at 59 cents per ton of 2,240 pounds; for Flat Top tunnel excavation, rock and other material, at $1 75 per per cubic yard.   The nineteen (19) feet of height of the section (of the tunnel) will be made up in its lower half, partly of No. 3 coal bed; and, in its upper half, of overlying slates, fireclay, and sandstone."   *   *   *   "If the coal bed should become of a less thickness than four feet, exclusive of the slates and coal not usually mined in the run of mine coal in adjoining collieries, this will entitle the contractors to a price of three and one-half ($3 50) dollars per cubic yard for the entire section of the tunnel, instead of the prices for coal and other excavations mentioned herein."

"Payment is to be made by the party of the second part for work done and materials furnished under this contract, on or about the 15th of each month, upon proper estimates rendered on the last day of the preceding month for the work done and the materials furnished during the preceding month, to the extent of and not beyond 85 per cent of the amount of such estimates; and such monthly estimates, to be valid, must be accompanied by

the certificate of the engineer of the company, approving the same and declaring that the work done and materials furnished as therein stated, are according to this contract; and without such certificate no estimate shall be valid and no payment can be demanded; and in all questions connected with such estimates and the amounts payable thereby and thereunder, the decision of the said engineer shall be final and conclusive on all parties; and the balance thereof, or the fifteen per cent remaining on such estimates shall not be payable until the whole work to be done under this contract has been fully completed, but shall be kept back as part of the security for the performance of this contract on the part of the parties of the first part."

" IV.  When the engineer in charge has furnished his certicate that all the work embraced in this contract has been completed agreeably to the specifications and in accordance with the directions and to the satisfaction and acceptance of the said engineer, there shall be a final estimate made of the quality, character, and value of said work, according to the terms of this agreement; when the balance appearing due to the said parties of the first part according to the certificate of said engineer, shall be paid to them within thirty days thereafter, upon their giving a release under seal to the party of the second part from all claims and demands whatsover, growing in any manner out of this agreement, and upon their procuring and delivering to the party of the second part full release in proper form and duly executed, for mechanics and material men, of all liens, claims, and demands for materials furnished and provided, and work and labor done and performed upon or about the work herein contracted for under this contract."

It is alleged in the declaration that the "No. 3" coal bed did not only become of a less thickness than four feet, exclusive of the slates, &c., but that it entirely disappeared from the tunnel for the distance of 1,200 lineal feet, equal to 13,200 cubic yards; and that this fact is evidenced by the profile of the tun-

nel prepared by the defendant and furnished by it to the plaintiffs and filed with their declaration. This fact, expressly and distinctly alleged in the declaration, is admitted by the demurrer, and is not denied in fact. The plaintiffs do not claim the price of $3 50 per cubic yard where the vein of coal became of less thickness than four feet (as by the express terms of the contract they might do), but only where the vein of coal entirely disappeared from the tunnel, as shown by the defendant's profile, and admitted by the demurrer. Notwithstanding the clear and explicit provision of the contract, and the acknowledged disappearance of the coal vein from the course of the tunnel, and notwithstanding that the defendant's engineer in charge furnished his certificate, on the 8th day of July, 1888, that all the work embraced in the contract had been completed, by the plaintiffs, agreeably to the specifications and in accordance with his directions and to his satisfaction and *acceptance;* yet the Norfolk and Western Railroad Company refuses to pay for the work done by the plaintiffs according to the *price* fixed by the contract, and accepted by them, because its own engineer (who is a part of itself—its other *ego*—its paid employee), certifies that the plaintiffs are entitled to only $1 75 per cubic yard, instead of $3 50 per cubic yard; and that this action of its employee, however unjust and however flagrantly in abrogation of the *price* carefully guarded and fixed in the contract itself, is final and conclusive on the plaintiffs.

And this contention of the Norfolk & Western Railroad Company, the defendant, is approved and sustained by the order of the circuit court of Roanoke city complained of, and now under review—which dismisses the plaintiffs' suit on demurrer, without any investigation of the merits of their claim.

The grounds of the demurrer to the plaintiffs declaration, and to each count thereof, as stated in the brief of the appellee's counsel, are: 1. "Because the contract between the parties makes the estimates and certificates of the engineer as to the amounts due under the contract conclusive and binding

upon both parties, in the absence of fraud on the part of the engineer who made said certificates and estimates." And "in the first place, it is contended, that the declaration does not charge fraud upon the engineer at all, in the sense in which the word is used in all the decisions on the subject. All that it does is to charge, as a conclusion of law, that the engineer made a mistake so gross as to amount to fraud, &c."

This ground of demurrer is neither true nor tenable. The contract makes the parties fix the price at $3 50 per cubic yard: "If the coal bed should become of a less thickness than four feet, exclusive of slates and coal not usually mined in run of mine coal in adjoining collieries, this will entitle the contractor to a price of $3 50 per cubic yard for the entire section of the tunnel, instead of the prices for coal and other excavations mentioned herein." And the contract, so far from leaving the *price* to the estimate or discretion of the engineer, guarded by and imperatively, provides "there shall be a final estimate made of the quality, character, and value (not *price* per measure) of said work, *according to the terms of this agreement:* thus making the terms of the contract imperative upon the engineer, as the fixed basis of his calculation of the amount or value of the work *according to the price fixed by the contract.* There is no dispute or question as to the quality or character of the work, or as to its completion to the approval, satisfaction, and acceptance of the engineer: but the predication is, that, though the price is fixed by the contract, it emasculates itself—commits *felo de se*—and makes the engineer the absolute, final and arbitrary *dictator* of the *price*, or rate of compensation, which the contractors shall receive; and which, only, his principal shall pay. Even if this absurdity can be predicated of the *monthly* estimates provided for by the 3d section of the contract, there is nothing, whatever, said in the 4th independent section, as to the finality and binding force of the engineer's decision or estimate; nor, indeed, is there any provision that the engineer, as such, shall make any estimate. The provision

is: "IV. When the engineer in charge has furnished his cer-
tificate that all the work embraced in this contract has been
completed agreeably to the specifications and in accordance
with the directions and to the satisfaction and acceptance of the
said engineer, there shall be a final estimate made (not neces-
sarily by the engineer) of the quality, character, and value of
the said work, *according to the terms of this agreement*, by whom-
soever made."

It is expressly, distinctly, and positively charged in the de-
claration, that both the monthly and final estimates, made by
the engineer of the company, were not made according to the
terms of the contract; but were made in open and direct vio-
lation of the terms and intendment of the agreement under
seal between the parties. That, by the estimate of the engi-
neer, the price of $3 50 per cubic yard, fixed by the agree-
ment, for the section of the tunnel in which the coal bed No. 3
became of less thickness than four feet, (and, in fact, wholly
disappeared from the said tunnel,) was altered by the engineer
and put at $1 75 per cubic yard; and that, in so doing, the
said engineer made a mistake so gross as to amount to a fraud
upon the plaintiffs, depriving them of the enormous sum of
$23,100, to which they are justly entitled under the contract.
The second count is like the first, except that, instead of
charging that the estimates and certificate of the engineer
were a mistake so gross as to amount to a fraud, it alleges that
" the engineer, at the time said certificate and estimates were
made, knew that the said 'No. 3' coal bed not only became of
a less thickness than four feet, as aforesaid, but entirely dis-
appeared, which said conduct on the part of the said engineer
is a fraud upon the rights of the said plaintiffs."

The third count is like the others except that, instead of
charging mistake, as in the first count, and fraud, as in the
second count, it charges that in making said certificate and
estimates the said engineer did consult, confer, and advise with
certain officers and employees of the said defendant company,

&c., which said action of the said engineer they charge was misconduct, illegal, and injurious to their rights. The rule of law is that, even when the engineer acts strictly within the scope of his authority (the contract and terms of the agreement), that fraud, or mistake so gross as to amount to fraud, or necessarily to imply bad faith, will vitiate the estimate and set aside his decision; and, even in the case of an award, the arbitrator is held strictly to the terms of the submission, the contract of the parties, and cannot go outside of it, or contravene it. In the case of *Condon* v. *Southside Railroad Co.*, 14 Gratt., Judge Moncure says: "It now only remains, under the head we are now considering, to inquire whether the estimate made by the engineer in this case was such a one as the con-tract authorized? Did the engineer exceed his authority in making the estimate? If he did, then by analogy to the case of an award, and according to a principle of law which governs this case alike with that (if, in fact, there be any difference in this respect between the two cases) the estimate is void. The parties intended that all questions, whether of law or of fact, which might arise under the contract, should be determined by the engineer. * * * It is expressly declared that he shall determine when the contract has been complied with according to its just and fair interpretation, and the amount of the same, and all disputes and difficulties arising under the same, and that his decision shall be obligatory and conclusive between the parties without further recourse of appeal. He cannot set aside or disregard the contract between the parties. That contract must furnish the law of the case. He cannot alter the prices thereby ascertained, even though he may consider them too high or too low. If it should appear that he did so, his act would undoubtedly be void." See, also, *Galveston, &c. R. R. Co.* v. *Henry & Dilley*, 27 Amer. & Eng. R. R. Cases, 265; *Kisner* v. *Indianapolis, &c. R. R. Co.*, 12 Amer. & Eng. R. R. Cases, 314; *Louisville, &c.* v. *Donnegan*, 34 Amer. & Eng. R. R. Cases, 122.

The first count in the declaration charges a mistake in the certificate and estimate of the engineer so gross as to amount to a fraud upon their rights under the express and fixed terms of the contract, and such as necessarily implies bad faith.

The second count charges that the estimate and certificate of the engineer are founded on falsehood and a fraudulent perversion of fact, and are therefore not conclusive or final; that the engineer knew that the coal bed No. 3 had, in fact, wholly disappeared from the tunnel excavation, when he inferentially certified that it had continued to be four feet thick in the tunnel, by estimating and certifying that the plaintiffs were entitled to only the price of $1 75 per cubic yard instead of the price of $3 50 per cubic yard fixed by the contract to be their due if the coal bed, No. 3, should become of less thickness than four feet in the course of the tunnel. And this action of the engineer is charged to be actual fraud, and a deprivation to them of $23,100 of their just dues under the contract fully performed by them.

The third count charges such misconduct on the part of the engineer as would vititate and set aside an award in ordinary arbitration case, and, *a fortiori*, in this case.

These counts are all good and sufficient; and the court erred in sustaining the demurrer and denying to the plaintiffs the opportunity to make good their allegations by proof.

But, even though no fraud, mistake, or misconduct is alleged in the declaration, still it is alleged that the estimates and certificate of the engineer are not within the terms of the submission, but are in violation of the contract; and are, for that reason, void and inconclusive. The declaration alleges, that the contract fixed the compensation of the plaintiffs, under the circumstances admitted, at $3 50 per cubic yard, and that the estimate of the engineer fixed the compensation at $1 75 per cubic yard. If this be true, the engineer has exceeded his authority and abrogated the contract between the parties.

The second ground of demurrer is, that " the plaintiffs show

no cause of action, because the declaration does not allege that the releases mentioned in the 4th clause of the contract were ever given or tendered to the defendant, and no adequate excuse is set up for not tendering said releases." Two releases, are provided for by the 4th clause of the contract. One from the contractors; the other from " mechanics and material men.".

The principle is, that, if the estimates are proper and show the correct amount due, the release must be tendered to entitle the contractors to recover : but if, on the contrary, the estimates, are .not correct because fraudulent, or because not within the terms of the contract, the tender of a release is not necessary. The reason for the failure to tender the release is alleged in the declaration to be the refusal of the defendant to pay the amount due; and because fraud is charged in the declaration. And the declaration further says that all the mechanics and material men employed by said work, or having any claim or demand in reference thereto, have long since been fully paid, and that the time has long since expired, within which such mechanics and material men could assert any liens, claims, or demands upon or against said work, or upon or against said defendant; and, in fact, no such liens were ever filed or asserted. The plaintiffs must be allowed the opportunity to prove their case made by their declaration; and the circuit court of Roanoke city erred in sustaining the demurrer to the declaration, and to the several counts thereof.

For the foregoing reasons we are of opinion that the judgment of the circuit court of Roanoke city complained of is erroneous, and the same must be reversed and annulled; and the case will be remanded to the said court for further proceedings upon the merits.

JUDGMENT REVERSED.