## Richmond.

## City of Richmond v. Barry.

### March 11, 1909. ·

1. DEMURRER TO EVIDENCE—*Concessions of Demurrant.*—On a demurrer to the evidence, the party demurring is considered as admitting the truth of his adversary's evidence, and all just inferences that can be properly drawn therefrom by a jury, and as waiving all of his own evidence which conflicts with that of his adversary, and all inferences from his own evidence which do not necessarily result therefrom. Moreover, if the evidence is such that the jury might have found a verdict for the demurree, the court must grant judgment in his favor.

2. CONTRACTS—*Construction.*—Under a contract providing that a contractor · shall furnish all materials of every description, and shall shore all trenches with sheet piles and braces to prevent any settlement, and that when necessary sheet piles and braces shall be left in the trenches to prevent settlement, lumber and timber left in a sewer at the request of the city engineer constitute materials which, according to the contract, the contractor had to furnish and leave in the trenches.

3. CONTRACTS—*Construction—Ambiguity—Usage of Trade — Estimating Brick Wall.*—Where a contract for a brick sewer provides that the "price for bricks furnished and laid in the sewer shall be twenty dollars and fifty cents per M," in the absence of any local usage or custom which should control in ascertaining the number of bricks laid in the sewer, or of any special agreement, the parties are deemed to have contracted with reference to the general usage of trade, or universal custom relating to such matters: and, according to such trade usage or custom, the number of bricks is to be ascertained by measurement and allowing so many bricks to the cubic foot, and not by actual count. This trade usage or custom is read into the contract by operation of law, and becomes as much a part of the contract as if incorporated into it.

4. CONTRACTS—*Awards—Engineer's Estimates—Usage of Trade.*—Although a contract with a city provides that the city engineer shall decide all questions, difficulties and disputes growing out of the contract, and that his estimates and decisions shall be final and conclusive upon the parties thereto, he cannot violate the provisions of the contract nor ignore the meaning attached by trade usage to words or expressions used in the contract, and which are made a part thereof by operation of law.

5. EVIDENCE—*Usage of Trade to Fix Meaning of Contract.*—Parol evidence of a general usage of trade or universal custom may be received to fix and determine the meaning of words of a contract affected by such trade or usage which would be otherwise ambiguous.

6. APPEAL AND ERROR—*Errors of Calculation—Correction.*—A manifest or admitted error in the amount of a judgment at law will be corrected by this court, without remanding the cause for such correction.

Error to a judgment of the Law and Equity Court of the city of Richmond in an action of assumpsit. Judgment for the plaintiff. .Defendant assigns error.

*Amended and affirmed.*

The opinion states the case.

*H. R. Pollard* and *Geo. Wayne Anderson,* for the plaintiff in error.

*Meredith & Cocke,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This action of assumpsit, brought by Thomas A. Barry against the city of Richmond, grew out of the execution of certain work under four written contracts entered into by the city with Barry, for the construction of certain sewers and other incidental work in connection therewith, the plaintiff claiming an indebtedness to him from the city of $7,924.73, on the following bill of particulars:

"For timber furnished in penitentiary system of
sewers, as per bill of particulars ............ $2,269.05
Balance due on brick work on penitentiary system
of sewers, as per bill of particulars .......... 2,825.84
Balance on brick work and excavation on Church-
hill avenue and Twenty-first street, as per bill
of particulars ............................ 69.42
Balance due on brick work, excavation, laying pipes
and sheeting in Orleans street sewers, as per bill
of particulars ............................ 2,760.42

$7,924.73"

It appears that the timber furnished in connection with the
penitentiary sewers, for which the charge of $2,269.05 was
made, had been disallowed by the city engineer, and payment
refused by the city, on the ground that under the contract and
specifications made a part of the contract, the contractor was
obliged "to furnish all materials, tools, labor, etc., except terra
cotta pipe," in accordance with this provision in the specifica-
tions, viz.: "Excavations shall be done in the most careful
manner, shoring all trenches with sheathing, piles and braces
to prevent any settlement—where necessary sheathing, piles and
braces shall be left in trenches to prevent settlement."

The other items claimed in the bill of particulars, with the
exception of an item of $88.32, grew out of a claim made by
the plaintiff, that under a proper construction of the contracts
and specifications for the doing of the work contracted for, the
plaintiff was entitled to have bricks furnished by him paid for
at the rate per thousand named in the contract, to be ascertained
by *measurement* of the work, allowing so many bricks to the
cubic foot; whereas, the city contended, and so made up and
furnished to the contractor estimates from time to time as well
as a final estimate, that the bricks furnished were to be ascer-

tained by an actual count of the bricks in a square foot, and
then by a lineal measurement of the work.

Upon the plea of *non assumpsit* interposed by the defendant
city, accompanied by its grounds of defense in writing, a jury
was impaneled, and after the evidence offered by both the
plaintiff and the defendant had been submitted to the jury, the
defendant city filed a written demurrer, with the specific
grounds thereof in writing, to the evidence of the plaintiff, in
which demurrer the plaintiff joined, and the jury were there-
upon required to and did assess the plaintiff's damages to be
the aggregate of the several sums stated in his bill of parti-
culars, subject to the opinion of the court upon the demurrer to
the evidence; whereupon, the court, at a later day, and after
argument of counsel of the demurrer to the evidence, for reasons
stated in a written opinion, made a part of the record, sustained
the demurrer as to the item of $2,269.05 for timber used in
the construction of the "penitentiary sewers," but overruled
the demurrer as to all the other items contained in the bill of
particulars, and entered judgment, to which this writ of error
was awarded, in favor of the plaintiff and against the defendant
city for the sum of $5,665.68, with interest as set forth in the
judgment.

The plaintiff in error (defendant below) assigns as error
the ruling of the lower court upon the demurrer to evidence in
favor of the defendant in error; while the latter assigns as
cross-error the ruling against him as to his claim for timber
furnished for the penitentiary sewers and required to be left
therein.

Upon an examination of the evidence in the record, and the
questions of law presented thereby, we are satisfied that the
statement of facts made by the court below in its written opin-
ion is correct; that its judgment upon the demurrer to the
evidence is right, and that the reasons for the decision it
rendered are as clearly and forcibly expressed in the opinion

made a·part of the record as we could state them; therefore, we adopt that opinion as the opinion of this court, which is as follows:

"This case, after elaborate argument, comes before this court on a demurrer to the evidence interposed by the defendant, the city of Richmond, the jury finding for the plaintiff, Barry, for each of the several claims, upon the demurrer to the evidence, subject to the judgment of the court on the law of the case.

"As preliminary to and as a guide to the court in its decision, it is necessary to have before the court in passing upon a demurrer to the evidence, the rule as to the evidence, its truth, and inferences therefrom, as laid down and settled by our own Supreme Court of Appeals.

"The rule as laid down by Judge Keith, in the case of the *University of Virginia* v. *Snyder,* 100 Va. 577, 42 S. E. 341, is that 'by the demurrer to the evidence, the party demurring is considered as admitting the truth of his adversary's evidence, and all just inferences which can be properly drawn therefrom by a jury, and as waiving all of his own evidence which conflicts with that of his adversary, and all inferences from his own evidence which do not necessarily result therefrom'—citing *Johnston* v. *C. & O. Ry. Co.,* 91 Va. 171, 21 S. E. 238.

"There is another rule established by our own court, to the effect that 'where, upon a demurrer to the evidence, the evidence is such that a jury might have found a verdict for the demurree, the court must grant judgment in his favor.' *Citizens Bank* v. *Taylor,* 104 Va. 164, 51 S. E. 159.

"The court now proceeding to a discussion and decision of the case at bar, would say that the claim for lumber, in its opinion, stands upon a different footing from the other claims of plaintiff for which the jury gave verdict. In the court's opinion, under the contract itself, the plaintiff is barred of his right to recover.

"The contract provides, 'that the said party of the first part agrees with the said party of the second part, for the consideration herein mentioned, and at his own proper cost and expense, to do all the work, and furnish all the materials, tools and labor necessary to carry out this agreement under the conditions hereinafter specified,' etc.   I shall not quote further from the terms of the contract at this time—except to allude to the provision that the specifications are made a part of the contract, and call attention to the clause where it is agreed that the work to be done under this contract is as follows: *To furnish all materials of every description* and the necessary tools, labor and mechanics and build the following sewer—underscoring is the court's, because in my opinion when the above provisions are read in connection with the requirement in the specifications, 'excavations shall be done in the most careful manner, shoring all trenches with sheet piles and braces to prevent any settlement.   Where necessary sheet piles and braces shall be left in the trenches to prevent settlement, the lumber and timber left in the sewer at the request of the city engineer constituted materials which, according to the contract, the contractor had to furnish and leave in trenches, and which constituted the consideration to be furnished by the contractor on his part for which he was to be compensated out of the money he was to receive for the building and construction of the sewers.   In other words, this was covered completely by the contract, *'modus et conventio vincunt leges.'*   Therefore, the court will give judgment for the defendant, the city of Richmond, on so much of the verdict rendered by the jury as to the claim for lumber, as is set out in the verdict.

"This brings us to the penitentiary sewer, as to which the jury found for plaintiff on the demurrer to the evidence, subject to the judgment of the court on the law.

"The contract for 1st penitentiary sewer reads, on page 6: 'Price for bricks furnished and laid in sewer twenty dollars

and fifty cents ($20.50) per M.' This is all that is said as to the account or method of payment.

"The question here presented, and which represents the matter in dispute between the plaintiff, the contractor, and the defendant, the city of Richmond, is whether the bricks furnished by the contractor are to be paid for by and ascertained by actual count or by measurement of the work and allowing so many bricks to the cubic foot.

"The case of *Richlands & Co.* v. *Hiltebeitel,* 92 Va. 94, 22 S. E. 806, is so apposite, that I shall, at the risk of being tedious, quote at length from this case. Judge Riely, who delivered the opinion, says: 'The Richlands Flint Glass Company bargained with J. H. Hiltebeitel, the appellee, to do the brick work of the glass factory it proposed to erect, and George McCall, who was then its vice-president, drew up a memorandum of the agreement which was signed by the appellee. The memorandum merely sets forth the various prices which were to be paid per thousand for laying the brick of the different parts of the factory. It does not specify any mode by which the quantity of brick laid was to be ascertained and settled for. It is wholly silent as to this matter. The difference between the parties as to the method by which the quantity of brick is to be ascertained constitutes the real controversy in this case. The appellant company claims that as the contract does not specify any particular mode, its proper construction is that they are to be ascertained by actual count, and that no evidence can be received to show otherwise, as to do so would be to violate the well settled rule that parol evidence cannot be received to vary or contradict a contract in writng. The appellee contends, on the other hand, that where a contract for laying brick does not specify any particular mode of ascertaining the quantity, it is to be ascertained by the custom of the locality, or the usage of trade, which, in this case, would be by measuring the work and allowing so many bricks to the

cubic foot. If the quantity is ascertained by measurement, which includes the mortar joints and makes no allowance for small openings, and not by actual count, the quantity of brick thus ascertained is necessarily greater. 'Extrinsic evidence,' it is said in Browne on Parol Evidence, sec. 57, 'is admissible in the construction of a mercantile contract, to show that phrases or terms used in the contract have acquired, by the custom of the locality, or by the usage of trade, a peculiar signification not attaching to them in their ordinary use, and this whether the phrases or terms are in themselves apparently ambiguous or not.' And again it is stated in the same work (p. 216) 'that parol evidence is competent to annex to a contract a custom or usage of the business and locality known to the parties, or so generally and well settled as to be presumed to be known to them, and with reference to which they must be deemed to have contracted.' As the contract in this case contains no stipulation as to the method by which the quantity of brick was to be ascertained for settlement, but is silent, or at least ambiguous, in that respect, parol evidence was admissible to show whether there was any agreement between the parties as to this matter, and if so, what it was; and if there was no agreement between them, then to show what was the custom of the locality where the contract was made, or the usage of trade, and with reference to which, in the absence of any special agreement they are to be deemed to have contracted.' Judge Riely cites, as sustaining his opinion, *Lowe* v. *Lehman,* 15 Ohio St. 139; *Ford* v. *Tirrell,* 9 Gray (Mass.) 401; *Hinton* v. *Locke,* 5 Hill (N. Y.) 437; *Walls* v. *Bailey,* 49 N. Y. 464, 10 Am. Rep. 407.

"In this case of *Richlands, &c. Co.* v. *Hiltebeitel, supra,* the supreme court affirmed the ruling of the lower court in holding complainant was entitled to have the number of brick in the glass factory laid by contract work estimated and paid for by measurement, computing the same at twenty-two bricks to the cubic foot.

"Let us now, as on a demurrer to the evidence, apply the law of this case, as laid down by Judge Riely, to the case at bar. Under the contracts with the plaintiff the contracts provided that 'price of bricks furnished and laid in sewer were (at so many dollars) $20.50 per M' for penitentiary sewer and extensions of this sewer near C. & O. Ry. and on 2nd street; the extensions being of the original contract. As I take it from the evidence, there was no local custom or usage by which this clause of the contract could be interpreted, as this was the first time that contractors were required to furnish at their own expense the cement used for the laying of the bricks in the sewer. Theretofore, the defendant had always furnished the cement used. The plaintiff for the first time did sewer work for the defendant, and testifies that no information was given to him, and that he had no knowledge of the fact that he was to be paid for the bricks laid according to the actual numerical count of the bricks, and that he knew of no such custom of the engineer's office, and although it was the custom, as testified to, that it was the rule to count the bricks in the horizontal or running sewer, but to measure the manholes, the plaintiff testified that he did not know of the rule or custom or the distinction between horizontal sewers and manholes as to the counting of bricks in the one case and the measurement in the other, and as a matter of fact the bids introduced in evidence show that Barry alone bid the same on both horizontal sewers and manholes. There being no local usage or custom which should control in the interpretation of the meaning of this clause of the contract, then the usage of trade with reference to which, in the absence of any special agreement, they are to be deemed to have contracted, must prevail, provided such usage of trade or universal custom is established by the evidence.

"The question is here fairly met by the testimony of General Henry T. Douglas, Mr. York and Mr. Blanton.

"General Douglas is asked, 'In following your profession,

has it come within your duty to have the construction of cul-·
verts, sewers or drains?' His answer is, 'Yes.' He is then
asked, 'Has that been so in Virginia as well as in the other States
mentioned by you?' His answer is, 'Yes.' He is then asked,
'Please state what is the custom in ascertaining the number of
bricks in a sewer or culvert.' Answer, 'The custom is to
measure the area of the completed work and taking the area
of the bricks before they were placed in the work to arrive at
the quantity in cubic yards or in thousands.' He is then
asked, 'Do you mean by that, that the number of bricks is as-
certained by measurement?' Answer, 'I do.' He is then asked,
'Is that the universal custom, so far as you know?' Answer,
'Yes.' The next question is, 'Did you ever know of it being
ascertained by attempting to count the number of bricks in a
sewer?' Answer, 'I never did.'. He is then asked, 'When the
contract says that the price to be paid for brick laid in a sewer
at so much a thousand is it, or not, customary to ascertain the
number by measurement?' Answer, 'My usual custom has
been to ascertain by measurement and as far as I know every
other engineer that I am familiar with.'

"To the same effect is the testimony of Charles S. York, con-
sulting engineer, and of A. Cole Blanton, Esq. Mr. York who
testifies that he is inspecting engineer for the new sewerage
system that is being introduced in Baltimore city, and who
has practiced his profession in Maryland, Virginia, both the
Carolinas, Georgia, Pennsylvania, New York and Delaware,
in answer to the question, 'In the experience that you have
had, can you state, whether or not it is the custom to ascertain
the number of bricks to be paid for in sewers, culverts, drains
and arches by measurement or by counting the brick?' He
answers, 'I never heard of counting the brick. They are always
paid by measurement and in no other way. I don't see how
we could draw a contract well to have work done satisfactorily
and equitably between contractor and parties concerned, by

counting the brick. Generally, after the work is done, we measure up the work and we allow twenty-one bricks to a cubic foot and pay accordingly; that has been the only custom I have ever known or ever heard of.'

"I shall content myself with referring merely to the deposition of A. Cole Blanton with the statement that it corroborates the testimony of General Douglas and Mr. York.

"Thus, it will be seen that there is ample proof of the usage of trade and universal custom. As opposed to this is the evidence of the city engineer, for whose character and ability this court entertains the highest opinion; but on the demurrer to the evidence, under the rule laid down by our own supreme court as shown by the cases cited, *supra*, this evidence in conflict with that of Douglas, York and Blanton goes out, and we have it conclusively established that according to the usages of trade and the universal custom, the price of bricks laid in the sewer at $20.50 per 'M' means, and meant at the time of the making of the contract, that the bricks, both for the horizontal sewer as well as for the manholes, were to be paid for by measurement and not by count. This usage of trade or universal custom, by operation of law, is read into the contract and becomes a part of the contract, as much so as if written into the contract '*in totidem verbis*.'

"This being so, we are brought face to face with the proposition, whether the provision in the contract, that the city engineer shall decide all questions, difficulties and disputes, of whatever nature, which may arise relative to the construction, prosecution and fulfillment of this contract, and as to the character, quality, amount and value of any work done, materials furnished under or by reason of this contract, and his estimates and decisions upon all claims, questions and disputes, shall be final and conclusive upon the parties hereto.

"But before discussing the question raised by this provision of the contract, the court should pass upon the admissibility

of the evidence of Douglas, York, Blanton and West, which logically should have been passed upon before the discussion, *supra;* but as the court in its opinion holds this evidence admissible, this is a mere matter of form in the preparation of the court's opinion, and is not a matter of substance.

"This case is not the case of the *Oriental, &c. Co.* v. *Blades & Co.,* 103 Va. 740-41, 50 S. E. 270, for here there is an ambiguity which it is proper to introduce testimony to explain, and to which the testimony of the engineers introduced by the plaintiff gives a fixed and definite meaning according not to local usages or customs, but according to general usages of trade and the universal custom. The true rule, as I gather it from the cases, is that local and particular usages or customs need not be specially pleaded. See the collection of authorities and statement of the law in 12 Cyc. 1097, under head of pleading 96. As I read the Virginia authorities, I see no case contrary to this weight of authority when fairly analyzed. This being the law, as I take it, we have on this demurrer to the evidence a fixed meaning to the language, 'price for bricks furnished and laid in sewer twenty dollars and fifty cents ($20.50) per M,' used in the contract for the penitentiary sewer and extensions. Having arrived at this conclusion as to the admissibility of the evidence showing the meaning of the language just above quoted, I am of opinion that, under the rulings of *Mills & Fairfax* v. *Norfolk & W. R. Co.,* in the two cases, 90 Va. 523-530, 19 S. E. 171, and 91 Va. 613, 22 S. E. 556, and cases cited, for the city engineer under the provision of the contract above quoted to give a decision contrary, would be for the arbitrator to violate the provisions of the contract and to break a provision of the contract made a part of it by law. And in addition, as under the rule as to the effect of a demurrer to the evidence, the jury had a right to believe the statement of Thomas Barry, that shortly after the beginning of the work the city engineer informed him that the work would be

measured and not counted as Mr. Wilkerson was doing, Barry testifying that as he understood Col. Cutshaw he stated substantially that he would be paid by measurement and not by count. This was a question of fact for the jury, and on the demurrer to the evidence, the city engineer's evidence (Col. Cutshaw), who testifies that he never made such a statement, goes out. And, therefore, as the jury had a right to believe Barry and give full weight to his testimony, the court must do so, and therefore, in addition to the contract itself, when the universal custom and general usage of trade is read into it; this court feels constrained to give judgment as to the penitentiary sewer and extensions in favor of the plaintiff.

"Applying the same rules of law, as governing a demurrer to the evidence, as are set out in the beginning of this opinion, and the authorities cited to sustain them, the court feels constrained to give judgment in favor of the plaintiff for the Orleans street sewers, in which measurement is written into the contracts. There is, as I understand the argument of the learned city attorney, no charge of actual fraud in the making of the changes in the proposals—the changes are there and the words measurement are added and were added before the contracts were signed. The ambiguity was cured by the insertion in these contracts of the term 'measurements,' showing they were to be measured and not counted. Certainly the jury had a right from the evidence in this case to so hold; that being so, this court on a demurrer to the evidence must so hold.

"The court holds that there being no waiver set out in the grounds of demurrer, it is at least doubtful whether it can be considered here. In addition, the question of waiver, being a question of fact as well as law, the jury might have well held under the evidence that no waiver was proven.

"Finally, the court holds that sufficient claim was made as to Orleans street sewer to Mr. Bolton, who refused it, when taken in connection with claim made before the committee as

testified to, Barry, p. 11 of the deposition.   And in addition the contract fails to show necessity for more formal claim.

"The demurrer to the evidence, as to the claim for lumber left in the sewers and trenches will be sustained in favor of the defendant, the city of Richmond, and judgment thereon given in favor of the defendant, notwithstanding the verdict of the jury.

"The demurrer to the evidence as to the claims for bricks laid in penitentiary sewer and extensions and Orleans street sewers will be overruled and judgment given for plaintiff in accordance with verdict of the jury in these cases.   An order will be prepared in accordance with this opinion, which is directed to be filed with the record and made a part thereof."

It appears, however, that in the above opinion and the judgment entered pursuant thereto, to which this writ of error was awarded, there was unintentionally allowed, as is conceded, in the claim of defendant in error for brick work, etc., in the Orleans street sewers, the sum of $88.32, for sheathing required to be left in those sewers; therefore, the judgment to the extent that it allows a recovery of said sum of $88.32 will be corrected and as so corrected will be affirmed.

*Amended and affirmed.*