## CIRCUIT COURT OF THE CITY OF WINCHESTER

Henry H. Godfrey

v.

Benjamin F. Hofheimer, III, et al.

April 22, 1994

Case No. 93–L–66

BY JUDGE ROBERT K. WOLTZ

After a jury trial of this breach of contract case, it is necessary to resolve the defendants' Motion to Set Aside the Verdict. Defendants move that the verdict be set aside as contrary to the evidence and for entry of judgment in favor of the defendants. This portion of their motion is denied. They further move that the plaintiff be put on terms to accept a judgment in a lower amount or submit to a new trial as to all issues, that is to say, they seek a remittitur. This motion is denied. Their next motion is to set aside any damages in excess of $200,000 in order to conform the verdict to that amount which was the original *ad damnum* asserted; or, alternatively, to set aside the verdict for any amount in excess of the $300,000 to which figure the plaintiff amended his *ad damnum*. This motion is also denied. Alternative to setting the verdict aside and entering judgment for the defendants, they move to set the verdict aside as excessive and order a new trial as to all issues or to damages alone. This motion is sustained and a new trial granted limited to the issue of damages.

In 1986, Godfrey Volkswagen, Inc., was a sales and service garage operated by the plaintiff. The corporation and the plaintiff entered into a contract to sell the business to the defendants. The plaintiff Godfrey,

if not for other reasons, was party to the contract with reference to a "non-compete" provision. By its terms, Godfrey agreed not to be connected with a competing garage business within a certain geographical area and for a particular length of time. For this undertaking on his part, the defendants agreed in addition to certain provisions to "provide Henry H. Godfrey with the use of two new automobiles each year for the rest of his life, to be selected by Godfrey from the lines offered by Seller at the acquired location, with the insurance and property tax to be paid by Buyer. Gas and operating costs will be paid by Godfrey."

The subject matter of this action is Godfrey's allegation that the defendants breached the quoted portion of the contract by their failure commencing July 1, 1991, to furnish any new automobiles for his use. On that date, amendment to Code § 46.2–1550 became effective, and by its terms, use of dealer's license plates was so restricted as to exclude Godfrey from the use of defendants' dealership motor vehicles, which necessarily bore dealer's license plates.

Godfrey first brought a Bill in Equity for Specific Performance. Among other defenses, defendants asserted in view of the new code section the doctrines of illegality and impossibility. Defendants also filed a Cross-Bill seeking thirty odd thousand dollars in damages, alleging that certain of the motor vehicle parts transferred to them under the contract were obsolete and sold for that much less than their supposed inventory value.

On the basis that there was no ground for granting equitable relief, by pretrial order, the case was pursuant to Code § 8.01–270 transferred to the law docket. Subsequently by Amended Motion for Judgment, Godfrey sued in the amount of $200,000 for past and anticipatory breaches of contract. On the morning of trial over defendants' objection but without a motion by them for delay or continuance, the Court granted Godfrey's motion filed three or four days before trial to increase his *ad damnum* from $200,000 to $300,000. After a three-day trial, the jury returned a verdict in favor of Godfrey on his claim in the sum of $421,640 and likewise found for him on defendants' counterclaim. The defendants did not move or argue for or take exception to the portion of the verdict with respect to the counterclaim as a consequence of which that portion is affirmed.

As it impinges tangentially on a portion of defendants' motion, their objection to the amendment increasing the amount of the *ad damnum* will be treated first. Rule 1:8 of the Rules of the Supreme Court pro-

vides in part, "Leave to amend shall be liberally granted in furtherance of the ends of justice." Cramped and niggling constrictions on allowance of amendments are not in favor. The modern trend is toward liberality in granting amendments, and the Rule is but reflective of that tendency. *Jacobson v. Southern Biscuit Co.*, 198 Va. 813 (1957). While in this instance furtherance of the ends of justice may not demand allowance of the amendment, the propriety in granting it is not mitigated by any injustice.

Permitting the increase in *ad damnum* here does not affect any matters of jurisdiction, such as the jurisdictional amount necessary to remove from a state to a federal court, or to reach a jurisdictional amount necessary for appeal to a higher court. The increase does not change the nature of the cause of action, nor is a new cause of action created, nor are new substantive matters injected into the proceeding. The amendment does not obstruct or affect the defendants' preparation for trial as they were already aware of the content of the case through the pleadings, discovery and their own investigation and not likely could or would have done more in anticipation of an increased *ad damnum*. The amendment does not change the standard for measuring damages and is little more than recognition of a reassessment of the value of his case by the plaintiff. The increase does not prevent the defendants from shoring up their defenses or from attacking the substance of plaintiff's action any more than had the *ad damnum* remained the same. On the foregoing, *see generally* Am. Jur. 2d, *Damages*, § 856.

As to lateness in making the motion for the increase and in the granting of the motion, absent prejudice to the other party, this may be done at almost any stage of proceedings and can be done as late as the time of trial, *id.*, though post-verdict amendment to the *ad damnum* is too late and not allowed. *Powell v. Sears, Roebuck & Co.*, 231 Va. 464 (1986), and *Whitley v. Booker Brick Co.*, 113 Va. 434 (1912), cited there.

Amendment of pleadings under Rule 1:8 is discretionary with the trial court, bearing in mind the rule of liberality. *Bentz v. Bentz*, 2 Va. App. 486 (1986). Here we have something of a *tertium quid*, for allowing the amendment to increase the *ad damnum* is not on its face or necessarily "in furtherance of the ends of justice," but on the other hand as this amendation has neither procedural nor substantive impact, no positive injustice results to the other party. Where no injustice results on the one hand and on the other the furtherance of justice is

speculative at best, discretion properly is exercised favorably to and consonant with recognized modern bias toward liberality of amendment. Consequently, allowance of amendment here was proper exercise of discretion.

The next matter for consideration is the excess of the jury verdict to the extent of $121,640.00 over plaintiff's amended claim for damages. No extensive discussion is necessary as both parties are in agreement that this excess cannot be recovered. It goes against the grain of reason and against the dictates of common sense that in an action for money damages, one should be rewarded by leave to take the largesse of a jury verdict exceeding the amount which the party acting in his own self interest sought at the hands of a court of justice. *Powell v. Sears, Roebuck & Co., supra*, relying upon the then one hundred eighty year old case of *Hook v. Turnbull*, 10 Va. (6 Call) 85 (1806), was emphatic that "a plaintiff cannot recover more than he sues for though he can recover less." The reasoning of *Powell* is stated at page 469:

> It would be unfair to cause a defendant and other interested parties to believe that plaintiff's claim is for a certain amount and no more only to let the jury award a greater amount. Such a procedure would disrupt the orderly conduct of trials and bring uncertainty to defendants and others who may be called upon to pay the amounts awarded against defendants.

Any amount awarded to a litigant greater than he sought in a suit has been said to work an estoppel requiring disallowance of the excess. *West v. Anderson*, 186 Va. 554, 564 (1947).

Next, the matter of setting aside the verdict, for what reason and to what extent, must be addressed. There is a long history of the common law concerning jury verdicts, as well as a venerable constitutional provision reflecting this history in that portion of Article I, § 11, reading, "That in controversies respecting property, and in suits between man and man, trial by jury is preferable to any other and ought to be held sacred." These make it an imperative that courts give due deference to the determinations of those finders of fact and exercise a healthy diffidence before disturbing them. Notwithstanding due deference and diffidence, the verdicts of juries, even with respect to damages, are not and have not been sacrosanct for:

> [I]t is an ancient and accepted doctrine of the common law, that judges have the power and are clearly charged with the

duty of setting aside verdicts where the damages are either so excessive or so small as to shock the conscience and to create the impression that the jury has been influenced by passion or prejudice, or has in some way misconceived or misinterpreted the facts or the law which should guide them to a just conclusion. (Citation omitted.)

*Chesapeake & Ohio Ry. Co. v. Arrington*, 126 Va. 194, 217 (1919).

This common law principle has found statutory expression in § 8.01–383[1] and § 8.01–430.[2] The latter section has remained unchanged since its adoption as § 6251 of the Code of 1919, shortly thereafter being upheld against constitutional attack in *W. S. Forbes & Co. v. Southern Cotton Oil Co.*, 130 Va. 245 (1921).

Before proceeding further, brief review of some of the evidence and an incident of trial plus three points of law, two regarding interpretation of contracts and one regarding evidence, need consideration. The uncontradicted evidence is that the words "new automobiles" as used in the contract are words with a special meaning and usage in the trade under the particular circumstances of this case. The testimonial evidence was that in accordance with trade custom and usage, "new automobiles" referred to those vehicles of the dealer which were used as demonstrators, commonly known as "demos," for the use of prospective customers as part of the dealer's sales efforts. That uncontradicted

---

[1] *Power to grant new trial; how often.* — In any civil case or proceeding, the court before which a trial by jury is had may grant a new trial, unless it be otherwise specially provided. A new trial may be granted as well where the damages awarded are too small as where they are excessive. Not more than two new trials shall be granted to the same party in the same cause on the ground that the verdict is contrary to the evidence, either by the trial court or the appellate court, or both.

[2] *When final judgment to be entered after verdict set aside.* — When the verdict of a jury in a civil action is set aside by a trial court upon the ground that it is contrary to the evidence, or without evidence to support it, a new trial shall not be granted if there is sufficient evidence before the court to enable it to decide the case upon its merits, but such final judgment shall be entered as to the court shall seem right and proper. If necessary to assess damages which have not been assessed, the court may empanel a jury at its bar to make such assessment, and then enter such final judgment.

Nothing in this section contained shall be construed to give to trial courts any greater power over verdicts than they now have under existing rules of procedure, nor to impair the right to move for a new trial on the ground of after-discovered evidence.

evidence furthermore was not incredible, nor were those testifying impeached in that respect. In addition, there was uncontradicted testimony that the plaintiff, Godfrey, did, under this contract provision, avail himself of demonstrator vehicles until July 1, 1991, when the amendment of § 46.2–1550 made that practice no longer legally acceptable. The evidence also was that the plaintiff was in his seventies and by a medical expert that he had Parkinson's disease which, while increasingly debilitating, would not shorten his life span from that which he could ordinary expect absent that disease.

As an incident of trial, plaintiff's counsel in closing argument requested a verdict for plaintiff in the sum of $271,200. The papers of the case, including the instructions, have been in the possession of the Clerk of the Court and principally in possession of the Court itself. It is notable that Instruction No. 8 on construction of the contract and containing four sentences has the following sentence underlined: "The words should be given their plain and ordinary meaning unless an obviously different meaning is apparent." This underlining was not present in the instruction at the time of delivery to the jurors, and presumably, it was done by the foreman or some other member.

As to the uncontroverted evidence as to the meaning of "new automobile," *Cheatham v. Gregory*, 227 Va. 1, 4 (1984), states:

> A trier of fact must determine the weight of the testimony and the credibility of witnesses but may not arbitrarily disregard uncontradicted evidence of unimpeached witnesses which is not inherently incredible and not inconsistent with facts in the record, even though such witnesses are interested in the outcome of the case. (Citations omitted.)

That principle is quite apropos in view of the testimony concerning the meaning of "new automobiles" in trade parlance. Parties are deemed to contract with reference to usages of the trade, including those that relate to the meaning of contract terms. When such custom or meaning is established by the evidence, then it "by operation of law is read into the contract and becomes a part of the contract, as much so as if written into the contract *in totidem verbis*." *City of Richmond v. Barry*, 109 Va. 274 (1909). On its face, the term "new automobiles" is unambiguous, but it may be shown, as it was in the present case, that terms used in a contract have by trade usage acquired "a peculiar signification not attaching to them in their ordinary use, and this whether the

phrases or terms are in themselves apparently ambiguous or not." *Id.*, quoting from *Richlands & Co. v. Hiltebeitel*, 92 Va. 91, 94 (1895).

Reinforcing and corroborating the "peculiar signification" attaching to the trade term is the undisputed testimony that up until July 1, 1991, Godfrey had consistently used demonstrators from the new dealership's inventory in pursuance of the particular contract provision, that is, "new automobiles" as understood when used in such provision in the trade. This action by Godfrey is significant because:

> When the terms of an agreement are doubtful or uncertain, the interpretation placed thereon by the parties themselves is entitled to great weight and will be followed if that may be done without violating applicable legal principles.

*Dart Drug v. Nicholakos*, 221 Va. 989, 985 (1981), quoting *O'Quinn v. Looney*, 194 Va. 548 (1953).

It is patent from the evidence that the defendants are liable for breach of the contract. Though it became illegal for the parties to perform as they had prior to July 1, 1991, still Godfrey was entitled to have them perform in substituted fashion, in this instance to compensate Godfrey in money. Even assuming that the jury was activated by passion or prejudice in their award of damages, that does not vitiate their verdict finding liability where there was ample evidence to support that finding. Consequently, the Court cannot set aside the whole verdict and enter judgment for the defendants.

The verdict of the jury as regards damages is clearly contrary to the evidence because of their faulty interpretation of the contract with respect to the meaning of "new automobiles" and their apparent determination under Instruction No. 8 to give that term its "plain and ordinary meaning" while overlooking or disregarding conclusive evidence, from trade usage and custom as well as the interpretation put on the term by the parties, to the contrary. This is a case where the jury "has misconceived or misunderstood the facts or the law." *Smithy v. Refining Co.*, 203 Va. 142 (1961).

In defense of the jury, that instruction was not as artfully tailored to fit the circumstances of this case as it should have been for it could, as it apparently did, mislead or confuse them. As a result and considering plaintiff's pleadings and closing argument, the damages allowed by the verdict were excessive justifying possible new trial under § 8.01–383. That being established, should the Court, based on the evidence before

it, enter judgment pursuant to § 8.01–430, require a remittitur as permitted by Code § 8.01–383.1, set aside the entire verdict and grant new trial as to all issues or set the verdict aside only as to damages and grant new trial limited to that issue?

There was considerable conflict in the evidence as to damages, and they are unliquidated. There is also the question of the plaintiff's life expectancy in view of his health. For these reasons, it is best that a jury make determination of the quantum of damages, rather than the Court on the basis of the evidence before it. Consequently, the Court will not reduce the damages to a specific amount and put the defendant to a remittitur nor reduce the damages to the amount of either *ad damnum* appearing in the pleadings. Therefore, no final judgment will be entered pursuant to § 8.01–430.

That code section does not require a new trial on all issues. *Apperson-Lee Motor Co v. Ring*, 150 Va. 283 (1928), a case rare or possibly unique in the Virginia Reports in that it involved an additur.[3] Where there is an improper verdict, *Sampson v. Sampson*, 221 Va. 896 (1981), sets out the alternatives available. First, where the liability is not clear or not separable from damages, the verdict must be set aside and a new trial granted as to all issues. This is not the case here, for the liability is both clear and separable. If the verdict awards excessive damages, then under § 8.01–383.1, the plaintiff can be required to remit part of the award or submit to a new trial. For reasons stated above, that course will not be followed here. Finally, where the verdict clearly decides liability and that verdict is supported by the evidence, the verdict may be set aside and a new trial granted limited to the issue of damages. In granting a new trial, "it is within the trial judge's discretion to decide whether a new trial should be on all issues or solely on the issue of damages." *Id.* The last alternative listed seems appropriate to the present case, and so discretion is exercised to set aside the verdict and grant a new trial solely on the issue of damages.

---

[3] Though the Seventh Amendment of the United States Constitution concerning right to jury trial in civil cases has so far escaped "absorption" into the due process provision of the Fourteenth Amendment so as to be applicable to the States, *Minneapolis v. Bombolis*, 241 U.S. 211 (1916), *but see Dice v. Akron, C. & Y. R. Co.*, 342 U.S. 359 (1952), additur, at least without the consent of the parties, was held to be violative of this amendment in federal jurisdiction in *Dimick v. Scheidt*, 273 U.S. 474 (1935).

From what has been said, the motion of the plaintiff for entry of judgment on the verdict reduced to the *ad damnum* of $300,000 is denied.